No. 14323

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

CHARLENE L. BORCHERS,

Petitioner and Respondent,

-vs-

JOHN RAYMOND McCARTER, JR.,

Respondent and Appellant.

Appeal from: District Court of the Eleventh Judicial District,
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

Warden, Walterskirchen & Christiansen, Kalispell, Montana
Richard DeJana argued, Kalispell, Montana

For Respondent:

Patrick Springer, County Attorney, Kalispell, Montana
Russell K. Jones argued, Deputy County Attorney, Kalispell,
 Montana
Robert Allison, Kalispell, Montana

Submitted: November 17, 1978

Decided: MAR 2 1979

Filed: MAR 2 1979

_Thomas J. Kearney_ Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

On September 14, 1976, petitioner, Charlene L. Borchers, filed a petition and order in the District Court of the Eleventh Judicial District, Flathead County, pursuant to the provisions of the "Revised Uniform Reciprocal Enforcement of Support Act (1968)" [URESA], sections 93-2601-41 through 93-2601-82, R.C.M. 1947, now sections 40-5-101 through 40-5-142 MCA. On December 13 the District Court ordered that the matter be held in abeyance pending an adjudication of the paternity issue. Respondent, John Raymond McCarter, Jr., was subsequently found to be the natural father of petitioner's daughter following a jury trial commencing March 6, 1978. He appeals.

Petitioner and respondent met in June 1965 while working at a retirement home in the State of Oregon. At the time they met, petitioner was married to Carl Borchers, but they parted in December 1965. Her relationship with respondent then developed rapidly, and she became pregnant. In June 1966, respondent moved to Detroit, Michigan, but continued to correspond with petitioner. On November 1, 1966, petitioner gave birth to a baby girl.

At the time of the birth, petitioner was lawfully married to Carl Borchers. His name appears on the child's birth certificate as the father. Petitioner subsequently obtained a divorce from him on November 30, 1966, having waited until after the baby's birth to facilitate the divorce proceedings.

Over the course of the next several years, petitioner made a number of attempts to obtain child support payments from respondent pursuant to URESA. In 1967, she filed a

petition for support in Marion County, Oregon. It was forwarded to Lake County, Montana, but never prosecuted. A second URESA petition was filed in Oklahoma County, Oklahoma, and forwarded to Lake County, Montana, in 1969. Again, no action was taken on the petition.

After 1969 petitioner testified that she lost track of respondent for some years. During this time she was remarried, in 1971, and later divorced, in 1973. The next URESA petition was filed in Benton County, Oregon, in 1975, and forwarded to Denver County, Colorado. A little more than a year later a fourth petition was filed in Benton County, Oregon, and forwarded to Boulder County, Colorado. Then, on September 3, 1976, a fifth petition was filed in Benton County, Oregon, and forwarded to Flathead County, Montana. This last petition forms the basis of the instant case.

No evidence was introduced to show that respondent was served with process until 1976. After he had been served in 1976, a hearing was held at which time respondent moved to dismiss the citation and asserted as a defense that he was not the father of the child named in the petition. On December 13, 1976, the Honorable James M. Salansky ordered:

"1. That this matter be held in abeyance until Petitioner, through her own counsel, brings an action for paternity against Respondent.

"2. That upon judgment being entered in any action for paternity brought by Petitioner against Respondent the Court will again consider the above matter."

On August 24, 1977, the deputy county attorney for Flathead County filed a "Petition for Determination of Paternity" in the same court and under the same cause number as the action which had previously been held in abeyance. Following a flurry of pretrial motions, the trial began on

March 6, 1978, and resulted in a jury verdict finding:

"1. The presumption that Carl H. Borchers is the natural father of Jayne Eliazabeth [sic] Borchers has been rebutted.

". . .

"2. John Raymond McCarter, Jr., is the natural father of Jayne Elizabeth Borchers."

Respondent appeals from this jury verdict, and petitioner has moved to dismiss the appeal as premature. A number of issues are presented for review but we find two issues to be dispositive of this case:

1. Whether the appeal should be dismissed for absence of a final determination from which an appeal may be taken.

2. Whether failure to rebut the presumption that Carl Borchers was the natural father of the child within five years of the child's birth bars a paternity action against a nonpresumed person.

On May 4, 1978, respondent filed his notice of appeal in the District Court. On May 23, petitioner moved this Court to dismiss the appeal on the grounds that ". . . no final, appealable judgment and order of support [had] been entered in this action . . ." The motion was submitted without brief. Respondent argued in opposition to the motion to dismiss that the paternity determination and the support determination are, in effect, separate actions and that the jury verdict in the instant case is an appealable final judgment under Rule 1, M.R.App.Civ.P.

Section 93-2601-67, R.C.M. 1947, now section 40-5-128 MCA, provides:

"If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both of the parties are present at the hearing or the proof required in the case indicates that the presence

-4-

> of either or both of the parties is not neces-
> sary, the court may adjudicate the paternity
> issue.  Otherwise the court may adjourn the
> hearing until the paternity issue has been ad-
> judicated."

Citing Black's Law Dictionary (Rev. 4th Ed. 1968), the Oregon Supreme Court found an "adjudication" to be "the giving or pronouncing a judgment or decree in a cause." Vasquez v. Courtney (1975), 272 Or. 477, 537 P.2d 536, 537. See also, Leonard v. Leonard (1965), 88 Idaho 485, 401 P.2d 541, 545; and, State v. Hoffman (1963), 230 Or. 98, 385 P.2d 741, 743-44.

The District Court's order of December 13, 1976, is consistent with this definition in providing "[t]hat upon judgment being entered in any action for paternity brought by Petitioner against Respondent the Court will again consider the above matter." (Emphasis added.) Therefore, we find that the jury verdict returned March 7, 1978, amounted, in substance, to a final judgment from which an appeal may be taken pursuant to Rule 1, M.R.App.Civ.P.

We are left, then, with the task of determining whether failure to rebut the presumption that Carl Borchers was the natural father of the child within five years of the child's birth should have barred this paternity action against a nonpresumed person.  We find that it should have.

In 1950 the National Conference of Commissioners on Uniform State Laws approved the Uniform Reciprocal Enforcement of Support Act.  The Act was subsequently amended in 1952, 1958, and 1968.  Montana first adopted URESA in 1951, Ch. 222, Laws of Montana (1951).  That act was replaced in 1961 when Montana adopted the 1958 version of URESA, Ch. 208, Laws of Montana (1961).  Then, in 1969, Montana adopted

the Revised Uniform Reciprocal Enforcement of Support Act, Ch. 237, Laws of Montana (1969). We note section 93-2601-81, R.C.M. 1947, now section 40-5-142 MCA, provides that "[t]his act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

A number of recent cases, arising in jurisdictions which have not adopted the 1968 revised act, have affirmatively answered the issue of whether URESA, absent the 1968 amendment expressly providing for paternity determination, implicitly authorizes courts to determine paternity. See Greenstreet v. Clark (Iowa 1976), 239 N.W.2d 143; Clarkston v. Bride (1975), 273 Or. 68, 539 P.2d 1094; and, Yetter v. Commeau (1974), 84 Wash.2d 155, 524 P.2d 901. Montana has adopted the clear statutory language of section 27 of the Revised Uniform Act, leaving no question as to whether a court can determine paternity as part of a URESA action in this state, section 93-2601-67, R.C.M. 1947, now section 40-5-128 MCA. However, specific procedures for addressing the paternity issue are not set forth in the revised uniform act.

Our legislature has, though, provided a statutory method of determining paternity under the Uniform Parentage Act, section 61-301 et seq., R.C.M. 1947, now section 40-6-101 et seq. MCA. When faced with statutes which address the same subject, we "must harmonize [them], if possible, and give effect to each." State ex rel. Irvin v. Anderson (1974), 164 Mont. 513, 524, 525 P.2d 564, 570. "Where statutes relate to the same general subject they should be so construed together, where there is no inconsistency

-6-

between them, so as to give effect to both where possible."
City of Billings v. Smith (1971), 158 Mont. 197, 212, 490
P.2d 221, 230.

The court in Clarkston, supra, noting similar circum-
stances, stated:

> "Since the issues involved in establishing pater-
> nity in a URESA proceeding precisely parallel those
> raised in a filiation proceeding, we believe that,
> absent some distinguishing policy, parallel proce-
> dures should be followed.
>
> ". . .
>
> "The URESA is a remedial statute designed to equal-
> ize the relative positions of residence and non-
> resident plaintiffs in support proceedings. While
> it reflects a legislative interest in minimizing
> the additional burdens and expenses which would
> otherwise be incurred by nonresident plaintiffs,
> this interest must be balanced against a legislative
> concern for the sensitivity of paternity adjudica-
> tions and the corresponding legislative policy of
> providing procedural protections for such determina-
> tions . . ." Clarkston, 539 P.2d at 1099.

The Uniform Parentage Act recognizes this connection in
section 61-309(1), R.C.M. 1947, now section 40-6-109(1) MCA,
which provides:

> "The district court has jursidiction of an action
> brought under this act. The action may be joined
> with an action for dissolution, annulment, separate
> maintenance, support, or adoption." (Emphasis
> added.)

We hold then that the issue of paternity in a URESA
action shall be determined according to the provisions of
the "Uniform Parentage Act," section 61-301 et seq., R.C.M.
1947, now section 40-6-101 et seq. MCA. See Matter of
Marriage of Gridley (1977), 28 Or.App. 145, 558 P.2d 1277,
1279.

In applying the Uniform Parentage Act as adopted in
Montana, to the facts of the instant case, we first note
that section 61-305, R.C.M. 1947, now section 40-6-105 MCA,
provides in pertinent part:

"(1) A man is presumed to be the natural father of a child if:

"(a) he and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred (300) days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;

". . .

"(2) A presumption under this section may be rebutted in an appropriate action by a preponderance of the evidence."

Thus, according to our statute, Carl Borchers is the presumed father of the child.

Section 61-307, R.C.M. 1947, now section 40-6-107 MCA, addresses who may bring an action to determine a father and child relationship.

"(1) Any interested party may bring an action for the purpose of determining the existence or non-existence of the father and child relationship presumed pursuant to section 61-305.

"(2) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 61-305 may be brought by the child, the mother or personal representative of the child, the department of social and rehabilitation services or its appropriate local affiliate, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor."
(Emphasis added.)

Therefore, in Montana, a person wishing to establish the existence of the father and child relationship between a child and a nonpresumed person, where the child has a presumed father pursuant to section 61-305, R.C.M. 1947, now section 40-6-105 MCA, must first rebut the statutory presumption of paternity in another.

As a result, section 61-308(1), R.C.M. 1947, now section 40-6-108(1) MCA, applies to the instant case and bars

-8-

an action to establish the father and child relationship between respondent and the minor daughter.

"(1) Limitation when father and child relationship is presumed.

"(a) An action may be commenced at any time for the purpose of declaring the existence of the father and child relationship presumed under paragraph (a), (b), or (c) of section 61-305(1); or,

"(b) For the purpose of declaring the nonexistence of the father and child relationship presumed under paragraph (a), (b), or (c) of section 61-305(1) only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party." (Emphasis added.)

Reversed and remanded with directions to enter an order dismissing the action.

_____
                        Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices