JA, Appellant

(Third Party Plaintiff),

v.

CJH and SA, Appellees (Respondents).

STATE OF WASHINGTON, ex rel., DAA, Appellant (Plaintiff),

v.

CJH and SA, Appellees (Respondents).

Nos. C–95–10, C–95–11.

Supreme Court of Wyoming.

Sept. 16, 1996.

Rene Botten of Northern Wyoming Law Associates, Sheridan, and Paul G. Jarvis, Guardian ad Litem, Buffalo, for Appellant JA.

Greg L. Goddard, County and Prosecuting Attorney, Johnson County, Buffalo, for Appellant State of Washington ex rel. DAA.

Dennis M. Kirven of Kirven & Kirven, Buffalo, for Appellee CJH.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,* and LEHMAN, JJ.

THOMAS, Justice.

■ In these consolidated cases, the dispositive issue is whether an action can be brought to establish paternity in an alleged putative father in the absence of a timely action to declare the nonexistence of a father and child relationship between the presumed father and the child. The district court dismissed an action brought by the State of Washington (Washington) under the Uniform Reciprocal Enforcement of Support Act to establish the paternity of CJH with respect to JA. JA intervened in that action through an appointed guardian *ad litem.* The district court ruled, since no timely action had been instituted to declare the nonexistence of a father and child relationship between JA and

the presumed father, the statutory presumption had become absolute. The district court ruled, consistently, that the action to establish paternity was foreclosed. The language of the applicable statute is clear and unambiguous and forecloses the paternity action in these circumstances. We affirm the decision of the district court.

In the Brief of Appellant State of Washington, ex rel., DAA, a single issue is posed:

When a child has a presumed father and more than five (5) years have elapsed since the date of the birth of the child, may the child or the state bring an action to establish paternity in a person other than the presumed father?

JA, the minor child, through his guardian *ad litem,* states two issues on appeal in the Brief of Appellant JA:

1. Did the District Court err in holding as a matter of law that SA is the presumed father of JA under W.S. 14–2–102 when it failed to consider facts which rebut, by clear and convincing evidence, that presumption?

2. If so, then did the District Court err when it applied the statute of limitations from W.S. 14–2–104(a) instead of the proper statute of limitations contained in W.S. 14–2–105?

CJH, the putative father, in his Brief of Appellee CJH, adopts the statement of the issue by Washington.

The facts in this case are settled by a Stipulation of Agreed Upon Facts. Those agreed facts are:

1. On October 8, 1992, the State of Washington, Ex Rel DAA, filed a petition (Civil Action No. 92–10 Ci–101, Fourth Judicial District, Johnson County, Wyoming) in accordance with the Uniform Reciprocal Enforcement of Support Act requesting the establishment of paternity of Respondent CJH and Order of Child Support for a dependent child named JA, who was born May 28, 1986. Approximately one month after birth, JA received medical treatment after suffering an apparent stroke, and was prescribed phenobarbital and other medications to control seizures.

* Chief Justice at time of oral argument.

Sometime in 1992, JA was examined by physicians and diagnozed [sic] as being "seizure free", and at such time all seizure medications were decreased and eventually discontinued.

2. Respondent CJH, a resident of the State of Wyoming, was served with the petition on October 10, 1992.

3. At the time of the birth of the minor child, JA, on May 28, 1986, the natural mother, DAA, was married to the presumed father, SA. SA and DAA separated approximately three years prior to conception of the minor child, JA.

4. DAA was married to SA from September 18, 1982, until their divorce on January 20, 1987. However, the existence of the minor child was not acknowledged or otherwise mentioned in the divorce decree.

5. The birth certificate contains no indication of the father of the minor child, JA. The minor child's name appears as [JCH] on the birth certificate.

6. Under the provisions of W.S. 14–2–102(a)(i), 1977, SA is the presumed father of the minor child, JA.

7. A period of more than five (5) years have [sic] expired since the birth of the child on May 28, 1986, and the filing of this action by the petitioner.

8. SA, currently a resident of the State of Arizona, was joined to this action as a necessary and indispensable party, and was served on May 7, 1993, but filed no answer or other responsive pleading.

9. On June 8, 1993, the court ordered blood testing to be administered to all parties for determine [sic] paternity in this matter.

10. Pursuant to the blood testing conducted by the Blood Center of Southeastern Wisconsin, the probability of paternity of the respondent, CJH, is 99.96%.

11. Pursuant to the blood testing conducted by the Blood Center of Southeastern Wisconsin, SA was excluded as the natural father of JA.

12. Respondent SA did not, within five years after the birth of JA on May 28, 1986, commence any action to determine the nonexistence of his presumed paternity of said child.

13. Neither SA or CJH have had a determination in any other jurisdiction of their paternity or other rights and obligations with respect to the minor child, JA.

14. On April 26, 1994, an order was entered allowing the minor child, JA, to intervene as a third party Plaintiff.

15. Neither CJH or SA have had continuous contact with the minor child.

On October 8, 1992, Washington, on the relation of DAA, invoking the Uniform Reciprocal Enforcement of Support Act, filed a petition in which it sought to have the existence of a father and child relationship between CJH and JA be determined and in which it also sought support. Washington had been furnishing support and also medical treatment to JA since September 22, 1987. CJH was served in Wyoming, and SA, who was also joined, was served in Arizona. SA did not file an answer to the petition nor any other responsive pleading.

It is clear no action ever was instituted to have declared the nonexistence of the father and child relationship between SA and JA, as provided for in WYO. STAT. § 14–2–104 (1978):

(a) A child, his natural mother or a man presumed to be his father under W.S. 14–2–102(a)(i), (ii) or (iii) may bring action:

* * *

(ii) For the purpose of declaring the nonexistence of the father and child relationship presumed under W.S. 14–2–102(a)(i), (ii) or (iii) **only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action if he has been made a party.** (Emphasis added.)

On April 26, 1994, the court permitted JA, through a guardian *ad litem*, to intervene in the paternity action as a third-party plaintiff. JA requested judgments against CJH or SA, or both of them, for child support. CJH answered, denying paternity, on

May 10, 1994. On May 24, 1995, the district court certified the case to our court, but we declined to answer the certified question of law. The parties respectively moved for summary judgment, and the district court issued an order of dismissal on August 16, 1995. The court ruled no timely petition to challenge the presumption of paternity in SA was filed, and "the petition to establish paternity in a person other than mother's husband at the time of the child's birth [SA] is dismissed." JA and Washington separately appealed to this court, where the cases were consolidated.

SA is presumed to be the father of JA in accordance with WYO. STAT. § 14–2–102 (1978), which provides, in pertinent part:

(a) A man is presumed to be the natural father of a child if:

(i) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred (300) days after the marriage is terminated by death, annulment or divorce or after a decree of separation is entered by a court; or

\* \* \*

(b) A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two (2) or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. A presumption is rebutted by a court decree establishing paternity of the child by another man.

Washington and JA opine that, because the probable paternity of CJH has been established, the presumption of paternity in SA has been rebutted by clear and convincing evidence in accordance with WYO. STAT. § 14–2–102(b). In a circular vein, they argue, since the presumption of paternity has been effectively rebutted, the paternity action on behalf of JA is timely under WYO. STAT. § 14–2–105 (1978) because there is no presumed father. The pertinent statutory language reads:

An action to determine the existence of the father and child relationship as to a child **who has no presumed father** under W.S. 14–2–102 may not be brought later than three (3) years after the birth of the child, or later than three (3) years after the effective date of W.S. 14–2–101 through 14–2–120, whichever is later. **However, an action brought by or on behalf of a child whose paternity has not been determined is not barred until three (3) years after the child reaches the age of majority.**

WYO. STAT. § 14–2–105 (1978) (emphasis added).

The essence of this argument is that, since the blood testing resulted in there being no presumed father, JA had until three years beyond majority to bring the action to determine the existence of the father and child relationship between CJH and JA. This argument fails to acknowledge the barrier to the action found in WYO. STAT. § 14–2–104. Pursuant to the provisions of WYO. STAT. § 14–2–102, because of the existing marriage, JA did have a presumed father, SA. Our rules of statutory interpretation are:

If the language of a statute is clear and unambiguous, we must abide by the plain meaning of the statute. \* \* \* Furthermore, it is a fundamental rule of statutory interpretation that **all portions of an act must be read in pari materia,** and every word, clause, and sentence must be construed so that no part is inoperative or superfluous.

*Deloges v. State ex rel. Wyoming Workers' Compensation Div.,* 750 P.2d 1329, 1331 (Wyo.1988).

*See Halpern v. Wheeldon,* 890 P.2d 562 (Wyo.1995); *Parker Land and Cattle Co. v. Wyoming Game and Fish Comm'n,* 845 P.2d 1040 (Wyo.1993); *Matter of ALJ,* 836 P.2d 307 (Wyo.1992); *Matter of Paternity of JRW,* 814 P.2d 1256 (Wyo.1991).

The provisions of WYO. STAT. § 14–2–104(a) through (c) simply inform with respect to when an "appropriate action" can be instituted. The child, the natural mother, or the presumed father can bring an action at any time to formally declare the **existence** of

the presumed father and child relationship. An action to declare the **nonexistence** of the presumed father and child relationship must be brought within a reasonable time after gaining knowledge of relevant facts and cannot be brought later than five years after the birth of the child. It is only in the instance in which the presumption of the father and child relationship is rebutted in a timely action that the court may proceed to make a determination of paternity with respect to another man. The thrust of the district court ruling, in this case, was that there was no appropriate action brought under which it could proceed.

The district court's ruling is confirmed by public policy and precedent in Wyoming. In *A v. X, Y, and Z,* 641 P.2d 1222, 1225 (Wyo. 1982), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 388, 74 L.Ed.2d 518 (1982), we adopted language of the Honorable Terrence L. O'Brien:

> As reflected in its opinion letter, the trial court properly found that:
>
> " * * * the State has an interest in protecting and preserving the integrity of the family unit. See also, *Meyer v. Nebraska,* 262 U.S. 390 [398–400], 43 S.Ct. 625 [626–627], 67 L.Ed. 1042, 1045 (1923). It also has an interest in protecting the best interests of the child. Even in this era of no-fault divorce, frequent premarital sex and cohabitation and new attitudes toward child rearing, **a child has a right to legitimacy and that right is one the State is bound to protect during minority.** Rule 17(c), W.R.C.P. See also, *In the Matter of Parental Rights to Child X, * * * * [Wyo., 617 P.2d 1078 (1980) ]." (Emphasis added.)

In that case, we held the asserted biological father had no standing to bring an action to establish his paternity of a child born during the mother's marriage to another man. We espoused legitimacy as being in the best interests of the child based upon a strong public policy. The Supreme Court of the United States similarly identified the compelling social policy in ruling that the presumption of legitimacy is a substantive rule of law flowing from a presumed father's connection with the child at the time of birth. *Michael*

*H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91, *reh'g denied,* 492 U.S. 937, 110 S.Ct. 22, 106 L.Ed.2d 634 (1989), *reh'g denied,* 499 U.S. 984, 111 S.Ct. 1645, 113 L.Ed.2d 739 (1991).

We summarized our policy in *Matter of Adoption of R.S.C.,* 837 P.2d 1089, 1093 (Wyo.1992), saying:

> The Wyoming Legislature has enacted stringent provisions that tend to insure children born during wedlock will not be considered illegitimate. That presumption of paternity is sufficiently strong in certain instances to override even the fact of biological parenthood.

If this policy were not strongly supported, "[a]ny stranger desiring to injure the mother, the child, or the presumed father, for whatever reason," could do so at will with perhaps devastating consequences. *See X, Y, and Z,* 641 P.2d at 1227.

The reliance by JA and Washington upon *Ellison v. Walter ex rel. Walter,* 834 P.2d 680 (Wyo.1992), is misplaced. In *Ellison,* we held a paternity action could be initiated pursuant to Wyo. Stat. § 14–2–105. There was, however, no presumed father within the definition found in Wyo. Stat. § 14–2–102(a) because the mother was not married to anyone when the child was born. That statute (Wyo.Stat. § 14–2–105) does provide there is no bar to a paternity action by the child until three years after the child reaches majority when paternity has not been determined. Ellison was held to be the natural father under that section for purposes of child support.

The difference, of course, is that JA has a presumed father, and the case falls within Wyo. Stat. § 14–2–104, not § 14–2–105. SA continues as the presumed father, and his paternity, established by the statutory presumption, cannot be disregarded. *See also JRW,* 814 P.2d 1256 (holding presumed father's action to establish his non-paternity two years after his divorce from the natural mother was not brought within "reasonable time" under Wyo. Stat. § 14–2–104(a)(ii)). We hold the statutory provisions limiting the time within which an action may be brought to declare the nonexistence of the father and

child relationship are appropriate because they promote the child's entitlement to legitimacy.

The plain language of WYO. STAT. § 14–2–104(a)(ii) requires that an action to declare the nonexistence of a parent and child relationship must be brought within a reasonable time and, in any event, no later than five years after the child's birth. No such action was brought, and the presumption of SA's paternity no longer can be challenged. Under these circumstances, the statutes do not justify an action to establish paternity on the part of CJH, in this instance or in any separate proceeding.

The Order of Dismissal entered in the district court is affirmed.

MACY, Justice, specially concurring.

I agree with the majority's interpretation of the relevant statutes in this case, and I also agree that, by following those statutes, we must declare that the child's action is barred by the five-year limitation found in WYO. STAT. § 14–2–104(a)(ii) (1994). I believe, however, that, if the appellants had properly challenged the constitutionality of the five-year limitation, we would have been compelled to declare that the statute violates the equal protection guarantees of the Wyoming and United States constitutions and is, thus, unconstitutional because it improperly discriminates between children with presumed fathers and children without presumed fathers. WYO. CONST. art. 1, § 2; U.S. CONST. amend. XIV. Although Appellant State of Washington discussed its equal protection concerns in the lower court and devoted more than two pages in its appellate brief to an equal protection analysis, it did not directly contest the constitutionality of the provision. As a consequence, the constitutionality issue is not properly before this Court. *See Billis v. State,* 800 P.2d 401, 407–08 (Wyo. 1990); *Munson v. State,* 770 P.2d 1093, 1098 (Wyo.1989). *But see Bredthauer v. TSP,* 864 P.2d 442 (Wyo.1993).

In *Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), the United States Supreme Court applied an intermediate level of scrutiny to determine whether a paternity statute which treated illegitimate

children differently than it treated legitimate children violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. 486 U.S. at 461–62, 108 S.Ct. at 1914–15; *see also A v. X, Y, and Z,* 641 P.2d 1222 (Wyo.), *cert. denied* 459 U.S. 1021, 103 S.Ct. 388, 74 L.Ed.2d 518 (1982). The Supreme Court determined that a Pennsylvania statute which required an illegitimate child to bring a paternity and support action within six years after the child's birth but did not similarly restrict a legitimate child's right to bring a support action was not substantially related to an important governmental objective. *Clark,* 486 U.S. at 462–65, 108 S.Ct. at 1914–16.

The Supreme Court noted that the six-year period did "not necessarily provide a reasonable opportunity to assert a claim on behalf of an illegitimate child." *Clark,* 486 U.S. at 463, 108 S.Ct. at 1915. The Supreme Court recognized that the mother may not be willing or able to present the child's claim because of her relationship with the natural father or because of the emotional and financial strain of having an illegitimate child. 486 U.S. at 463–64, 108 S.Ct. at 1915–16. The Supreme Court explained that the six-year limitation was not substantially related to Pennsylvania's stated governmental interest in preventing stale and fraudulent claims from being presented because, in other circumstances, Pennsylvania law allowed litigants to bring paternity and support claims later than six years after the child's birth. 486 U.S. at 464, 108 S.Ct. at 1915–16. The decision further discounted the problem of stale and fraudulent claims being initiated by stating that, with the increased sophistication of genetic testing, the problem was less prevalent. 486 U.S. at 465, 108 S.Ct. at 1916.

The Montana Supreme Court relied on the *Clark* decision to decide a case which was remarkably similar to the case at bar. *State of Arizona v. Sasse,* 245 Mont. 340, 801 P.2d 598, 601 (1990). In *Sasse,* the mother was married when she had intercourse with a man who was not her husband. 801 P.2d at 599. She became pregnant and gave birth to a child, and the mother's husband was presumed to be the child's father. *Id.* When the child was twelve years old, a paternity

action was commenced on behalf of the mother and the child against the man with whom the mother had extramarital intercourse. *Id.*

Montana had a statute which provided that a child with a presumed father had to bring an action within five years after the child's birth to declare the nonexistence of the father-child relationship. *Sasse,* 801 P.2d at 599. Montana also had a statute which allowed a child with no presumed father to have up to two years after he had reached the age of majority in which to bring an action. *Id.* The Montana Supreme Court held that the statutes created a "classification which distinguishes for disparate treatment children with presumed fathers and children without presumed fathers." *Id.*

Montana's discriminatory classification was "based on the state's interest in maintaining stable families and in the prevention of stale or fraudulent claims." *Sasse,* 801 P.2d at 601. The Montana Supreme Court noted that the five-year limitation may not be adequate because a mother may not be willing to commence an action on her child's behalf during the limitation period. *Id.* The Supreme Court recognized that other Montana statutes allowed paternity and support claims to be brought much later than five years after the child's birth and that the advances in genetic testing have removed "much of the fear of false or fraudulent claims of paternity." *Id.* Relying on these findings, the Montana Supreme Court declared that the five-year limitation was unconstitutional because the limitation was not substantially related to an important governmental objective. 801 P.2d at 602.

In Wyoming, the legislature requires a child with a presumed father to bring a claim within five years after the child's birth to declare that the father-child relationship does not exist. Section 14–2–104(a)(ii). This type of action is necessary before the child may establish that another man is his natural father. *Id.* A child without a presumed father, however, has until three years after he has reached the age of majority to bring an action to determine the existence of the father-child relationship. WYO. STAT. § 14–2–105(a)(i) (1977) (amended 1989 & 1991). Like the Montana statutes which were dis-

cussed in *Sasse,* Wyoming's statutory scheme discriminates between children with presumed fathers and children without presumed fathers. In order to comply with the equal protection guarantees, the classification must be substantially related to an important governmental objective.

The majority opines that the public policy which protects a child's right to legitimacy supports its decision to bar the child from bringing an action against the natural father. I simply cannot agree that we should protect the child's right to legitimacy when it is the child himself who disregards his legitimacy by seeking to establish that another man is his natural father. Furthermore, the five-year period may not be adequate because a mother may be reluctant or unable to bring an action within that time. Such an action may interfere with the mother's efforts to maintain an on-going relationship with the natural father or, for that matter, with the presumed father. *See Sasse,* 801 P.2d at 601; *Clark,* 486 U.S. at 463–64, 108 S.Ct. at 1915–16.

If the constitutional question had been properly presented, I would have, on the basis of the record presented in this case, followed the United States Supreme Court and the Montana Supreme Court and held that § 14–2–104(a)(ii) does not pass constitutional muster. The statutory scheme which discriminates between children with presumed fathers and children without presumed fathers is not substantially related to an important governmental objective.

A child has a right to be supported by his parents. *See Smith v. Smith,* 895 P.2d 37, 42 (Wyo.1995); *see also RKS v. SDM,* 882 P.2d 1217 (Wyo.1994). When a child is disabled, the support obligation may continue even after the child has reached the age of majority. *Pauling v. Pauling,* 837 P.2d 1073, 1079–80 (Wyo.1992). A child's natural father may be better able to provide this support than the presumed father is. Additionally, Wyoming's intestacy statutes allow an illegitimate child, who has established the father-child relationship under the Uniform Parentage Act, to inherit from his natural father. WYO. STAT. § 2–4–107(a)(iii) (1980). By ignoring the reality that a presumed father is not the

natural father, we are potentially denying a child his right to be supported by, and inherit from, his natural father. We are, therefore, doing a disservice to a child when we deny him the right to prove who his natural father is.

The five-year limitation period promotes form over substance. We know from the genetic testing that the presumed father is not the child's natural father, and it is ridiculous for us to continue to operate under the fiction that he is. In light of the serious concerns with the constitutionality of § 14–2–104(a)(ii), I encourage the legislature to examine the parentage statutes and to amend them so that they eliminate the improper discrimination between illegitimate children and legitimate children and between children with presumed fathers and children without presumed fathers. I also suggest to the legislature that, in the course of revising the parentage statutes, it take into account the fact that modern genetic testing is very advanced and reliable. I do not believe that we should continue to apply legalistic presumptions while we disregard the results of genetic tests which show nearly conclusively which man fathered a child.