No. 96-579

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN THE MATTER OF THE PATERNITY OF
KATHRYN ROCHELLE VAINIO,

    a minor child,

MARGERY LaFOURNAISE VAINIO, JANET C.
SCHEELER, PAUL LaFOURNAISE, ANGELA
WALTERS and MICHAEL LaFOURNAISE,

    Petitioners and Appellants,

    v.

KEVIN E. VAINIO and PHILLIP LaFOURNAISE,

    Respondents.



APPEAL FROM:   District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable James Purcell, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Mark P. Yeshe, Attorney at Law, Helena, Montana

    For Respondents:

        J. Richard Orizotti; Poore, Roth & Robinson, Butte, Montana

        Kurt Krueger, Attorney at Law, Butte, Montana

Submitted on Briefs: May 15, 1997

Decided: August 19, 1997

Filed:

_____
                Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Margery LaFournaise Vainio (Margery) and Janet C. Scheeler, Paul LaFournaise, Angela Walters and Michael LaFournaise (the siblings) appeal from the judgment entered by the Second Judicial District Court, Silver Bow County, on its order granting the motions to dismiss filed by Kevin Vainio (Kevin) and Phillip LaFournaise (Phillip). We affirm.

We address the following issues on appeal:

1. Did the District Court err in concluding that Margery was estopped from challenging the father-child relationship between Kevin and Kathryn Rochelle Vainio and, on that basis, in granting Kevin's and Phillip's motions to dismiss?

2. Did the District Court err in concluding that the siblings of Kathryn Rochelle Vainio lacked standing to bring a paternity action and, on that basis, in granting Kevin's and Phillip's motions to dismiss?

## FACTUAL BACKGROUND

Margery's and Phillip's marriage was dissolved in March of 1980. The siblings involved in the present action are the adult children of that marriage.

Margery and Kevin entered into a common law marriage in September of 1985, and Kathryn Rochelle Vainio (Kathryn) was born the following month. Kevin petitioned for dissolution of his marriage to Margery in 1992. In the course of that proceeding, Margery challenged Kevin's paternity of Kathryn. After blood tests revealed that Kevin was not Kathryn's biological father, Margery sought sole custody of Kathryn. The district court determined that the doctrine of equitable estoppel prevented Margery from denying the

2

existence of a father-child relationship between Kevin and Kathryn and we affirmed on appeal. In re Marriage of K.E.V. (1994), 267 Mont. 323, 334, 883 P.2d 1246, 1253.

Several months after this Court's decision in Marriage of K.E.V., Margery and the siblings filed a "Petition to Determine the Existence of a Father and Child Relationship" requesting, in part, that the District Court "determine that Phillip LaFournaise is the natural father of Kathryn . . . and that Kevin E. Vainio is not the natural father of Kathryn . . . ." They named Kevin and Phillip as the respondents to the petition and, thereafter, both Kevin and Phillip moved to dismiss the petition for failure to state a claim upon which relief could be granted. The District Court dismissed the petition with prejudice, concluding that Margery is estopped from challenging the father-child relationship between Kevin and Kathryn pursuant to our decision in Marriage of K.E.V. and that the siblings lack standing to bring the petition. Margery and the siblings appeal.

STANDARD OF REVIEW

A petition may be dismissed for failure to state a claim only when it appears beyond doubt that the petitioner can prove no set of facts in support of the petition which would entitle her to relief. See Hollister v. Forsythe (1996), 277 Mont. 23, 26, 918 P.2d 665, 667. The petition is construed in the light most favorable to the petitioner and all allegations of fact therein are taken as true. Hollister, 918 P.2d at 667. A district court's determination that a petition fails to state a claim upon which relief can be granted is a conclusion of law, and

3

we review a district court's conclusions of law to determine whether the interpretation of the law is correct. Hollister, 918 P.2d at 667.

## DISCUSSION

1. Did the District Court err in concluding that Margery was estopped from challenging the father-child relationship between Kevin and Kathryn and, on that basis, in granting Kevin's and Phillip's motions to dismiss?

Margery previously challenged Kevin's paternity of Kathryn during the dissolution proceeding which ended their marriage. Although it was established that Kevin is not Kathryn's biological father, Margery's representations to Kevin, before and after Kathryn's birth, led him to believe that he was Kathryn's father and to act upon that belief. The district court in that case concluded that the doctrine of equitable estoppel prevented Margery from contesting the statutory presumption that Kevin is Kathryn's natural father and we affirmed. Marriage of K.E.V., 883 P.2d at 1253. Our holding in Marriage of K.E.V. clearly prevents Margery from contesting the existence of a father-child relationship between Kevin and Kathryn. Marriage of K.E.V., 883 P.2d at 1253.

Margery argues, however, that she is not precluded from establishing that Phillip is Kathryn's biological father because such a determination would not necessarily defeat Kevin's parental rights. She contends that, in Marriage of K.E.V., this Court expressly created a situation in which Kathryn may have two legally recognized fathers and that she is merely seeking to establish Phillip's paternity, in addition to Kevin's, in the case presently

4

before us. Margery relies on our observation in Marriage of K.E.V. that the identity of Kathryn's biological father was not at issue in that case and our statement that

> [t]he holding of this opinion does not in any way bar the biological father or the child, [Kathryn], from commencing a proceeding to determine the identity of the biological father.

Marriage of K.E.V., 883 P.2d at 1253.

Margery's reliance on this language is misplaced. While we left the door open for a proceeding by either Kathryn or her biological father to determine her biological father, we did not authorize Margery to do so.

Moreover, we have held that when a child has a presumed father under § 40-6-105, MCA, a person wishing to establish the existence of a father-child relationship between a child and a nonpresumed father must first rebut the statutory presumption of paternity in another. Borchers v. McCarter (1979), 181 Mont. 169, 175-76, 592 P.2d 941, 945. Kevin is presumed to be Kathryn's natural father because he and Margery were married at the time Kathryn was born, he received Kathryn into his home and he held her out to be his natural child. See §§ 40-6-105(1)(a) and 40-6-105(1)(d), MCA; Marriage of K.E.V., 883 P.2d at 1250. It is undisputed that Phillip meets none of the § 40-6-105(1), MCA, criteria for establishing a presumption that he is the natural father of Kathryn.

Thus, in order for Margery to establish that Phillip--a nonpresumed person pursuant to § 40-6-105(1), MCA--is the natural father of Kathryn, it would be necessary for her to first rebut the presumption that Kevin is Kathryn's father. We concluded in Marriage of K.E.V.,

5

however, that Margery is equitably estopped from contesting the presumption of Kevin's paternity. Marriage of K.E.V., 883 P.2d at 1253. Because she cannot rebut Kevin's presumed paternity, we conclude that Borchers precludes Margery from establishing paternity in Phillip. See Borchers, 592 P.2d at 945.

Margery also argues that dismissal of her petition violates her right to equal protection of the laws under the Montana and United States Constitutions. She contends that because Kathryn and Phillip, or any other man asserting paternity, retain the right to bring a paternity action, denying her the same opportunity denies her a fundamental right and violates equal protection principles.

This Court has recognized that parental rights are constitutionally protected. See, e.g., Matter of Guardianship of Doney (1977), 174 Mont. 282, 286, 570 P.2d 575, 577. A natural parent has a fundamental constitutional right to the custody of his or her child; this right is based on the integrity of the family unit, which necessarily includes a child's right to be with his or her natural parent. In re A.R.A. (1996), 277 Mont. 66, 71, 919 P.2d 388, 391.

The cases in which we have addressed this constitutional right, however, have involved situations where a parent asserted his or her own parental right to the custody of a child. See, e.g., Doney, 570 P.2d at 576; Matter of Guardianship of Aschenbrenner (1979), 182 Mont. 540, 597 P.2d 1156; Matter of M.G.M. (1982), 201 Mont. 400, 654 P.2d 994; Babcock v. Wonnacott (1994), 268 Mont. 149, 885 P.2d 522; In re A.R.A., 919 P.2d at 390. Moreover, Stanley v. Illinois (1972), 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208, and Little

6

v. Streater (1981), 452 U.S. 1, 68 L.Ed.2d 627, 101 S.Ct. 2202, which Margery cites as authority for her argument here, also involved situations where a party asserted his constitutional right to assert or deny his own parental relationship with a child. These cases are inapplicable to the situation presently before us where Margery is attempting to assert a constitutional right to establish a familial relationship between two other people.

Margery's right to custody of Kathryn is not at issue here; the respective parental rights of both she and Kevin to custody of Kathryn previously have been determined. Marriage of K.E.V., 883 P.2d at 1248. Instead, this case involves Margery's effort to establish Phillip's paternity of Kathryn. Margery cites to no authority, and we know of none, which recognizes a fundamental constitutional right in one person to a determination of a parent-child relationship between two others. We conclude that preventing Margery from asserting a parent-child relationship between Phillip and Kathryn does not violate her right to equal protection under the Montana and United States Constitutions.

We hold that the District Court did not err in concluding that Margery was estopped from challenging the father-child relationship between Kevin and Kathryn and, on that basis, in granting Kevin's and Phillip's motions to dismiss.

2. Did the District Court err in concluding that the siblings of Kathryn lacked standing to bring a paternity action and, on that basis, in granting Kevin's and Phillip's motions to dismiss?

The District Court concluded that because the siblings and Kathryn had established and maintained brother-sister relationships through Margery, their common parent, the

7

siblings had no personal stake in the outcome of a paternity action against Phillip and Kevin and, therefore, lacked standing to proceed. The siblings argue that the District Court erred as a matter of law because their interest in establishing a full-blood relationship with Kathryn satisfies the requirement that they have a personal stake in the outcome of the paternity action and because § 40-6-107(1), MCA, which allows "any interested party" to bring a paternity action to determine the existence or nonexistence of a presumed father-child relationship, authorizes them to pursue the action. We disagree.

A threshold requirement of every case is that a party have standing to bring the action. Bowen v. McDonald (1996), 276 Mont. 193, 201, 915 P.2d 201, 206. A party has no standing when there is no personal stake in the outcome of the controversy. In re Estate of Goick (1996), 275 Mont. 13, 19, 909 P.2d 1165, 1169. The mere fact that a person is entitled to bring an action under a given statute is insufficient to establish standing; the party must allege some past, present or threatened injury which would be alleviated by successfully maintaining the action. Sanders v. Yellowstone County (1996), 276 Mont. 116, 119, 915 P.2d 196, 197-98. Thus, without regard to whether the siblings are "interested parties" for purposes of bringing a paternity action under § 40-6-107(1), MCA, they first must establish that they have a personal stake in the outcome of the paternity action.

The siblings base their assertion of standing to bring the petition on their personal interest in establishing full-blood relationships with Kathryn. They fail to show, however, how establishing paternity in Phillip will alter or improve their current relationship with

8

Kathryn in any way. They currently enjoy a blood relationship between themselves and Kathryn through their common parent, Margery, and that relationship is neither placed at risk nor otherwise adversely impacted if Phillip is not established as Kathryn's biological father. Nor is there any indication in the record that establishing Phillip's paternity would benefit the siblings' relationship with Kathryn. We conclude that the determination of a father-child relationship between Phillip and Kathryn would have no effect on the siblings' relationship with Kathryn and, therefore, the siblings have not established that they have any personal stake in the outcome of this paternity action. We hold, therefore, that the District Court did not err in concluding that the siblings lacked standing to bring the petition and in granting Kevin's and Phillip's motions to dismiss on that basis.

Affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

9