JUSTICE BARZ
dissenting.
Section 40-6-108(l)(b), MCA, may not be in conformity with the federal Child Support Enforcement Amendments of 1984 requiring “[p]rocedures which permit the establishment of the paternity of any child at any time ...” 98 Stat. 1307, 42 U.S.C. § 666(a)(5), however, the statute is nonetheless constitutional. The majority asserts that this Court’s earlier decisions regarding this matter are not consistent. I disagree. This Court’s earlier decisions are in fact consistent. It is the majority’s present opinion that does not appear to be consistent.
In Borchers v. McCarter (1979), 181 Mont. 169, 592 P.2d 941, this Court correctly held that the five-year statute of limitations barred the mother from attempting to prove the nonexistence of the presumed father and child relationship. Likewise, this Court correctly held in Matter of W.C. (1983), 206 Mont. 432, 671 P.2d 621, that § 40-6-108(l)(b), MCA, is not unconstitutional and the Montana statutes do not differentiate between children born of wedlock and children bom out of wedlock. The statute rightfully protected the presumed father from having his father and child relationship challenged years later by the natural father.
It was this Court’s decision in State, Department of Revenue v. Wilson (Mont. 1981), [_ Mont. _,] 634 P.2d 172, 38 St.Rep. 1299, holding a three-year statute of limitations unconstitutional because the statute applied to all children born out of wedlock, that pertains to the same reasoning employed by the United States Supreme Court in the line of cases holding these statutes unconstitutional.
In Jimenez v. Weinberger (1974), 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed. 2d 363, the Court struck down laws establishing disabilities on illegitimate children.
In Levy v. Louisiana (1968), 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, a wrongful death statute, which precluded recovery by illegitimate children, was declared unconstitutional.
*348 In Trimble v. Gordon (1977), 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31, a statute barring illegitimate children from inheriting from an intestate father was held unconstitutional.
In Weber v. Aetna Casualty & Surety Company (1972), 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768, the Court held that illegitimate children were entitled to workman’s compensation benefits relating to the death of the father; and in Gomez v. Perez (1973), 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56, the Court established that illegitimate children have a right to the father’s support.
More recently, the Supreme Court struck down similar statutes in Mills v. Habluetzel (1982), 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770; Pickett v. Brown (1983), 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372; and Clark v. Jeter (1988), 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465. All these statutes deny illegitimate children a right enjoyed by legitimate children, and were found to be -unconstitutional, as was Montana’s statute in Wilson. However, § 40-6-108(l)(b), MCA, can be easily distinguished from the unconstitutional statutes. Notwithstanding that the statute creates a classification of children to be treated differently, the statute sustains more important government purpose than do the unconstitutional statutes and consequently, passes the muster of intermediate scrutiny analysis.
The precise statutory classification created by § 40-6-108(l)(b), MCA, must be accurately recognized before the intermediate scrutiny test can be properly applied. The statute does not draw a line between children born of wedlock and children born out of wedlock, and thereby deprive one class or the other of a constitutional right. It more correctly draws a line between children with presumed fathers who seek support from someone other than the presumed father and all others (“all others” include both children with presumed fathers and children without presumed fathers). The issue then becomes whether or not this classification is substantially related to an important governmental objective. The State’s objective, as the majority states, is to maintain stable families and prevent stale or fraudulent claims. While it could be argued that these interests alone are important enough, there are additional interests that may be more important. The best interests of the child have always been the most salient consideration in determining family matters where children are involved. How can the best interests of the child be served by allowing paternity actions to be brought years after a child has developed a child-parent relationship with the presumed father? Upon careful *349 examination of the statute it becomes obvious that it serves to promote legitimacy in that it ensures that the presumption of legitimacy will not be challenged, once the child reaches the age of five, by anyone. In other words, once the five-year statute has elapsed, if there has been no paternity action, the child’s father is the presumed father. The argument, that a child with a presumed father should have the right to seek support from the natural father at any time up to the age of majority, actually confers upon that child a right other children do not have; the right to choose their father. Such a right is not provided by the constitution. This statute simply requires any challenge to the presumed father’s status to be made within five years or not be made at all. The possibility now exists that the presumed father’s relationship with the child can be disrupted by an alleged natural father at any time. This situation was precisely the kind that occurred in Matter ofW.C., and it was § 40-6-108(l)(b), MCA, that prevented the alleged natural father from disrupting the presumed father’s relationship with his child. Once a child has reached the age of five, there unquestionably has been created a parent-child bond between the presumed father and the child. A paternity action challenging the presinned father and child relationship years after that relationship has been developed can serve only to damage and erode the bond between father and child.
Without § 40-6-108(l)(b), MCA, the possibility also exists that the presumed father will, upon discovering his spouse’s malevolent transgressions years later, claim not to be the natural father and attempt to establish the nonexistence of the presumed father and child relationship. In such a scenario, the mother and child may not, after many passing years, be able to locate the natural father for purposes of establishing a legal entitlement to support. Would it not be in the best interests of the child to continue to receive support from the presumed father and at least have a father?
This is similar to the situation that occurred in Clay v. Clay (Minn. Ct. App. 1986), 397 N.W.2d 571. A presumed father attempted to establish the nonexistence of his paternity during marriage dissolution proceedings. Minnesota’s three-year statute of limitations (identical to ours except it reads three instead of five years [1])barred the *350 presumed father from doing so and thereby appropriately protected the child. Minn. State Ann. § 257.57(l)(b). The constitutionality of the statute was raised and the appellate court affirmed the lower court’s decision upholding the statute, saying the three-year statute “[w]as designed to promote legitimacy ... [and] [permitting a challenge to the legitimacy of a child more than three years after its birth would defeat the clear statutory purpose of promoting legitimacy.” Clay, 397 N.W.2d at 577. Clay was appealed to the U.S. Supreme Court and the Court dismissed the appeal. (Clay v. Clay (1987), 484 U.S. 804, 108 S.Ct. 49, 98 L.Ed. 2d 14.) Therefore, it appears the United States Supreme Court was not troubled by the constitutionality question.
In Michael H. v. Gerald D. (1989), 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed. 2d 91, the United States Supreme Court looked at a statute providing that a presumption of fatherhood could be rebutted by blood tests, and only if motion for such tests was made within two years from the date of the child’s birth. The Court found the statute to be constitutional and not a violation of the due process clause or the equal protection clause of the United States Constitution.
It must be re-emphasized that § 40-6-108(l)(b), MCA, affects only . children that already have a presumed father. Therefore, the majority’s concern that there be “proper support for all children, lest they become a burden upon the state” is unfounded because only children attempting to seek support from someone other than their presumed father, would be barred by the five-year statute of limitations. The The presumed father would still be legally required to support the child because he too would be barred by the same five-year statute from doing otherwise. The present case is illustrative of this point. The majority opinion notes that the West Virginia court, in granting the divorce between Kathleen and the presumed father, Stelios, found that the parties had no children born to the marriage. If such is the case, then § 40-6-108(l)(b), MCA, has been satisfied and the presumed father’s status is sufficiently rebutted within the five-year period. If such is not the case, then Stelios remains the presumed father and is obligated to support the child; in either event the child is supported.
The statute not only serves to prevent stale or fraudulent claims and help maintain stable families, it also, more importantly, serves to protect the best interests of the child and the rights of the presumed *351 father by promoting legitimacy and the sanctity of the family in which the child was brought up.
The statute is not in conformity with the federal Child Support Enforcement Amendments of 1984 and should be changed, however, it is not unconstitutional as its classification is substantially related to a clearly important government interest.

 A 1989 Amendment rewrote the Minnesota statute to include a longer limitation (one year after the child’s majority) in situations where the presumed father becomes divorced from the child’s mother and is unaware of the child’s birth.