No. 95-019

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN THE MATTER OF THE PATERNITY
OF "ADAM," A Minor Child

"BOB,"

Petitioner and Appellant,

and

"MARY" and "JOHN,"

Defendants and Respondents.

**FILED**

SEP 29 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Robert G. McCarthy; Hennessey, Joyce, McCarthy &
Wing, Butte, Montana

For Respondents:

John M. Morrison; Meloy & Morrison, Helena, Montana


Submitted on Briefs:   May 25, 1995

Decided:   September 29, 1995

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

"Bob" appeals from an order of the Eighteenth Judicial District Court, Gallatin County, concluding that it was not in "Adam's," a minor child, best interest to declare paternity in "Bob."[1] We affirm.

## BACKGROUND

"Mary" and "John" moved to Bozeman together in 1990 to establish a restaurant and bakery. At that time, Mary and John lived together and their relationship was platonic. Mary met Bob in a business context in 1991 and thereafter they began an intimate relationship. Bob moved into Mary's and John's apartment in the early months of 1992. In April 1992, Bob's and Mary's relationship ended and Bob moved out of Mary's and John's apartment.

In late May of 1992, Mary learned that she was pregnant. In June of 1992, Mary requested that Bob relinquish his parental rights. Bob refused. Mary and John married on September 9, 1992. On December 15, 1992, Bob filed what was titled a "Notice of Intent to Claim Paternity" with the Clerk of Court for the Eighteenth Judicial District, Gallatin County. Mary gave birth to Adam on December 21, 1992. John was listed as Adam's father on the birth certificate.

On January 5, 1993, Bob filed a petition in which he asserted that he was Adam's biological father. Bob sought a determination

---

[1] Pseudonyms have been used in place of the parties' actual names.

2

of Adam's paternity and a determination of child custody, visitation, and child support obligations. The court appointed a guardian ad litem to monitor Adam and report to the court on a monthly basis. The parties agreed to submit the question of Bob's standing for a pre-trial ruling. The court ruled that Bob did have standing to challenge the presumption that John was the father pursuant to § 40-6-107(1), MCA.

The District Court ordered blood drawn from Bob, John and Adam to determine paternity. Mary and John opposed the order for blood samples and sought a writ of supervisory control from this Court. We denied the writ. Without waiving her right to object to a judicial determination of the father/child relationship, Mary stipulated that Bob was Adam's biological father.

After a bench trial, the court issued Findings of Fact and Conclusions of Law in which it determined that it was not in Adam's best interest to declare paternity in Bob and, thus, dismissed Bob's petition. Mary and John raise numerous issues which we do not address because they neither appealed nor cross-appealed. *See* Rule 4, M.R.App.P. Bob's three issues are summarized as follows:

1. Whether the District Court erred when it used the best interest of the child as the standard for determining whether to make a judicial declaration of paternity.

2. Whether Mary is estopped from denying that Bob is the natural father.

3. Whether the District Court erred in denying Bob's motion for a continuance.

## DISCUSSION

1. Whether the District Court erred when it used the best interest of the child as the standard for determining whether

3

to make a judicial declaration of paternity.

The District Court recognized that Bob was, in all probability, Adam's biological father. However, in its order determining paternity, the District Court stated that "it is not in [Adam's] best interest to determine paternity in [Bob]." In its order denying Bob's motion to reconsider, the District Court stated that "none of the arguments set forth in [Bob's] brief persuade the court that a different decision would be in [Adam's] best interest." Bob argues that the District Court erred in using the "best interest of the child" standard and, for the first time on appeal, that the District Court failed to consider his constitutional rights to equal protection and due process in its balancing of "conflicting presumptions of paternity and legitimacy." We disagree.

This is a case of first impression in Montana. We therefore look to other jurisdictions for guidance in applying the Uniform Parentage Act (UPA). The District Court relied heavily on Lehr v. Robertson (1983), 463 U.S. 248, 103 S.Ct 2985, 77 L.Ed.2d 614. Lehr was the putative father of a child born out of wedlock. The mother married another man after the child was born. When the child was about two years old, the husband was granted a decree of adoption. Although he never supported the child or offered to marry the child's mother, Lehr then filed an action to challenge the adoption as violating his rights of due process and equal protection. In rejecting Lehr's arguments, the United States Supreme Court drew a distinction between a "developed parent-child

4

relationship" as opposed to a "potential" relationship.

> When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," *Caban*, 441 U.S., at 392, his interest in personal contact with his child acquires substantial protection under the Due Process Clause. <u>At that point it may be said that he "act[s] as a father toward his children." *Id.* at 389, n.7. But the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create nor sever genetic bonds</u>. "[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in 'promot[ing] a way of life' through the instruction of children . . . as well as from the fact of blood relationship." [Citations omitted; emphasis added.]

*Lehr*, 463 U.S. at 261. The Court then went on to explain that the biological connection merely gives a natural father the opportunity to become a "parent":

> The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie.

*Lehr*, 463 U.S. at 262.

On December 15, 1992, prior to Adam's birth, Bob filed a "Notice of Intent to Claim Paternity" with the Clerk of the Eighteenth Judicial District Court. Section 40-6-105, MCA, provides in relevant part:

> A man is presumed to be the natural father of a child if:
>     (a)  he and the child's natural mother are or have been married to each other and the child is born during the marriage or within 300 days after the marriage is

5

terminated by death, annulment, declaration of invalidity, or divorce or after a decree of separation is entered by a court;

. . . .

(d) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child; or

(e) he acknowledges his paternity of the child in a writing filed with the department of health and environmental sciences or with the district court of the county where he resides, which court or department shall promptly inform the mother of the filing of the acknowledgment, and she does not dispute the acknowledgment within a reasonable time after being informed thereof, in a writing filed with the department of health and environmental sciences or with the district court of the county where the acknowledgment was filed. If another man is presumed under this section to be the child's father, acknowledgment may be effected only with the written consent of the presumed father or after the presumption has been rebutted.

(2) A presumption under this section may be rebutted in an appropriate action by a preponderance of the evidence. [Emphasis added.]

In this case, subsections (a) and (d) favor John as the natural father. These presumptions in John's favor, however, are rebutted by Mary's acknowledgment that Bob is the biological father. See In re Marriage of Miller (1992), 251 Mont. 300, 825 P.2d 189, in which a statutory presumption of paternity was rebutted when mother and husband acknowledged under oath that the husband was not the natural father. In addition, subsection (e) supports Bob's claim to paternity since he filed an acknowledgment which the natural mother did not dispute.

Although the UPA utilizes a "best interest" standard in certain contexts, it does not specifically establish that standard for determining whether a court should declare the father/child

6

relationship.[2]  The court, therefore, based its decision on case law from other states as well as UPA guidelines which it interpreted as promoting legitimacy.

The California Court of Appeals has held that even if a putative father establishes his biological paternity to a child conceived out of wedlock, but born after the mother married another man, the nature of his relationship to the child is governed by the best interest of the child.  Michael M. v. Giovanna F. (Cal. Ct. App. 1992), 7 Cal.Rptr.2d 460, 468.

The Washington Supreme Court has held that "[t]he best interest of the child standard does not entitle a court to presume that paternity determination is *automatically* in the child's best interest."  McDaniels v. Carlson (Wash. 1987), 738 P.2d 254, 261.  The court in *McDaniels* set out factors to be considered when determining whether a paternity determination is in the child's best interest:

> [I]n determining whether it is in the child's best interest to allow a paternity action by one outside the present family, the trial court should consider the stability of the present home environment, the existence

---

[2] Section 40-6-130, MCA, provides that when a child is the subject of an adoption proceeding, the court must determine whether it will be in the best interest of the child to award custody to the putative father.  Since Adam is not the subject of an adoption proceeding, this section is inapplicable. Section 40-6-114, MCA, provides for a pretrial recommendation of whether judicial determination of paternity would be in the best interest of the child.  If the recommendation is not accepted and the matter goes to trial, the UPA does not provide a standard for resolution of the paternity issue.

Section 40-6-116(3)(a), MCA, allows the judgment of the court determining the existence or nonexistence of the parent/child relationship to address such things as custody, visitation, bond "or any other matter in the best interest of the child."

or lack thereof of an ongoing family unit, the extent to which uncertainty of parentage already exists in the child's mind, and any factors which may be relevant in assessing the potential benefits or detriment to the child.

*McDaniels*, 738 P.2d at 262. A court must conclude that paternity determination is in the child's best interest based on the facts in the record. In re Marriage of Ross v. Austin (Kan. 1990), 783 P.2d 331, 339.

We agree with the District Court's analysis and adopt the "best interest of the child" standard for deciding whether there should be a judicial declaration of the father/child relationship in a paternity dispute under Montana's UPA. In determining whether paternity should be declared in Bob, the District Court considered: the parties' relationships with each other, their lifestyles and incomes; testimony from the parties, testimony from Adam's guardian ad litem, and testimony from a social worker retained by Mary and John. The District Court concluded that based on § 40-6-201, MCA, there is a rebuttable presumption that a child born into wedlock is legitimate. The court further considered the UPA's presumptions that a man is the natural father of a child if the man is married to the child's mother at the time of birth, § 40-6-105(1)(a), MCA; that there is a presumption of paternity when properly acknowledged, § 40-6-105(1)(e), MCA; and that these presumptions of paternity are subject to rebuttal, § 40-6-105(2), MCA.

Through the mother's stipulation that Bob was Adam's father, the statutory presumptions in favor of John as the biological father were rebutted. However, as pointed out by the United States

8

Supreme Court in *Lehr*, that biological determination merely sets the stage for the next question: Is it in the best interest of Adam to judicially declare the father/child relationship and thereby grant Bob the prerogatives of a parent? The probability that Bob is the natural father, although a weighty factor in applying the best interest analysis, is not the controlling consideration in judicially determining the parent/child relationship. As set forth above, the best interest analysis requires the court to look beyond the biological ties. The court must consider: the existence of a home environment; the stability of the present home and family; the extent to which uncertainty of parentage already exists in the child's mind; the efforts and commitments (if any) that the putative father has taken to establish supportive and financial ties with the child; as well as any other factors which may be relevant in assessing the potential benefits or detriments to the child.

In the present case, the District Court considered that Bob is probably Adam's father, a fact essentially conceded by Mary. Further, the court noted that Bob has had no contact with Adam and has demonstrated no personal commitment to or responsibility for Adam; nor has he taken steps to obtain suitable employment or housing or to establish a child support fund. The District Court weighed these facts against the stability of Mary's and John's marital relationship, their care for Adam, and their financial stability. The District Court noted that John's name appears on Adam's birth certificate, that Adam has always lived with Mary and

9

notice of the trial and the guardian ad litem had not revised her report to the court. We disagree.

Bob did not subpoena the guardian ad litem, she therefore proceeded with a planned vacation and was out of state at the time of trial. By express agreement of both parties, she testified by telephone. She testified that she relied "on common sense" and that she had not seen Adam in seventeen months. She appears to have made only limited efforts to monitor and report on Adam. Given these facts, we hold that the District Court did not abuse its discretion when it denied Bob's motion for an extension of time so that the guardian ad litem could update her report. To conclude on this issue, we note that the guardian ad litem did not appeal the decision of the District Court.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11