2004 SD 41

**The DEPARTMENT OF SOCIAL SERVICES OF the STATE of South Dakota, ex rel. Julienne C. WRIGHT, Plaintiff and Appellant,**

v.

**Bret J. BYER, Defendant and Appellee.**

No. 22609.

Supreme Court of South Dakota.

Considered on Briefs April 28, 2003.

Reassigned July 24, 2003.

Decided March 31, 2004.

Rehearing Granted May 7, 2004.

Wm. Mark Kratochvil, Brookings County Deputy State's Attorney, Brookings, SD, for plaintiff and appellant.

Donald M. McCarty of McCann, Ribstein, Hogan & McCarty, Brookings, SD, for defendant and appellee.

KONENKAMP, Justice (on reassignment).

[¶ 1.] In this appeal, we are confronted with an instance where the presumption of legitimacy resulted in a child not receiving financial support from either her presumed father or her putative father. Because the mother was pregnant at the time of the divorce and the husband's paternity was in doubt, the parties agreed that genetic testing would later resolve the issue. The child was born within ten months of the dissolution of the marriage, and the genetic testing later established that the former husband was not the father. In the action against the putative father to establish his paternity, the circuit court granted summary judgment dismissing the case and refusing to order a blood test. The court ruled that the action was not commenced within the sixty-day statutory period allowed to contest paternity. We conclude that this statute of limitations violates the equal protection guarantees of the South Dakota and United States Constitutions. Thus, it is unconstitutional because it improperly discriminates between children with presumed fathers and children without presumed fathers. We are left, therefore, with both the presumption of legitimacy and the presumption of paternity from genetic testing, which create conflicting presumptions here. We reverse and remand for the circuit court to consider the best interests of the child in resolving the conflict.

**Background**

[¶ 2.] Julienne Wright and Stephen Stein married on June 24, 1994. Four years later, they became estranged, and Wright moved out of the home. From August to October 1998, she lived with defendant, Bret J. Byer. On February 4, 1999, Wright and Stein divorced. The divorce decree incorporated their stipulation, which provided for joint legal and physical custody of their two sons. The decree also ordered that because custody was to be shared equally neither party would pay any child support. In addition, the stipulation provided: "considering the plaintiff is currently pregnant, the parties agree that a paternity test will be performed after the child is born. If [Stein] is determined [to be] the biological father of the child, the visitation schedule for the minor child will be the same schedule as for the other children, as set forth in this provision...." A girl, K.S., was born on May 2, 1999. Stein was listed as the father on her birth certificate, and she was given Stein's name. Neither Wright nor Stein brought an action to determine paternity within sixty days of the child's birth.

[¶ 3.] Sometime thereafter, the mother received public assistance for K.S. from the State of South Dakota. Consequently, almost three years later, on March 9, 2002, a paternity action was commenced by the Department of Social Services, seeking to have defendant Bret J. Byer declared K.S.'s father and requesting an order for child support. In her affidavit, Wright alleged that while she was still married to Stein, she was living with Byer when K.S. was conceived. She asserted that the issue of Stephen Stein's paternity had been disputed since the divorce, but recent paternity testing had excluded him as the biological father of K.S.

[¶ 4.] Relying on *In re Support Obligation of Do Rego*, 2001 SD 1, 620 N.W.2d 770, the trial court reluctantly dismissed the action because it had not been brought before the limitations period expired. In granting summary judgment, the court stated, "the statutes do have a reason and a purpose, and once in awhile they fail in

that reason and purpose." Thus, the court ruled, "I'm afraid I'm going to have to hold my nose and grant[.]"

[¶ 5.] Under his divorce decree, Stein is not presently obligated to pay any child support for his two sons or K.S. From the sparse record, we cannot determine if any effort has been made to modify the decree to provide for the support of his presumed daughter, K.S. There is only the stipulation, with its tentative recognition that he may not be K.S.'s father.

## Analysis and Decision

[¶ 6.] Our standard of review for summary judgments has been recited in numerous cases and need not be repeated here. *See Kobbeman v. Oleson,* 1998 SD 20, ¶ 4, 574 N.W.2d 633, 635. There are two statutes applicable to these proceedings. First, SDCL 25–8–57 provides:

> Any child born in wedlock, or born within ten months after dissolution of the marriage, is presumed legitimate to that marriage even if the marriage is subsequently declared to be null and void, or subsequently dissolved by divorce. This rebuttable presumption of legitimacy can only be disputed by the husband or wife, or a descendant of one or both of them.

Second, SDCL 25–8–59 provides:

> Any action contesting a rebuttable presumption of paternity as established by §§ 25–8–50 to 25–8–58, inclusive, shall be commenced in circuit court either sixty days after the creation of the presumption of paternity or the date of any administrative or judicial proceedings relating to the child including proceedings to establish a support obligation in accordance with § 25–8–52, whichever occurs earlier, except in cases where there are allegations of fraud, duress, or material mistake of fact. In cases involving allegations of fraud, duress, or material mistake of fact, any action con-

testing a rebuttable presumption of paternity shall be commenced within three years after the creation of any presumption. The burden of proof shall be upon the moving party and the payment of child support, or any other legal responsibilities of the parties, may not be suspended during the pendency of the proceedings, except upon a showing of good cause by the moving party.

[¶ 7.] In this case, Byer, the putative father, successfully raised the presumption of legitimacy in SDCL 25–8–57 and the limitations period in SDCL 25–8–59 to avoid taking a blood test to determine his paternity. Thus, he escaped an obligation to pay support for the child he is alleged to have fathered. The presumption of legitimacy was intended to protect children from the stigma of illegitimacy and to preserve society's interest in family unity. Neither of these goals was fulfilled here. The former husband is not the father and apparently is not supporting the child and the putative father escaped before any paternal duty could be imposed. Now the child faces the prospect of having no father to support her.

## A. Unconstitutional Statute of Limitations

[¶ 8.] The United States Supreme Court in *Clark v. Jeter* applied the intermediate scrutiny standard to decide whether a paternity statute that treated illegitimate children differently than it treated legitimate children violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. 486 U.S. 456, 461–62, 108 S.Ct. 1910, 1914–15, 100 L.Ed.2d 465 (1988). There, the Court ruled that a statute that required an illegitimate child to bring a paternity and support action within six years after the child's birth but did not similarly restrict a legitimate child's right to bring a

support action was not substantially related to an important governmental objective. *Id.* at 462–65, 108 S.Ct. at 1914–16.

[¶ 9.] The Supreme Court wrote that the six-year period did "not necessarily provide a reasonable opportunity to assert a claim on behalf of an illegitimate child." *Id.* at 463, 108 S.Ct. at 1915. The Court recognized that the mother may not be willing or able to present the child's claim because of her relationship with the natural father or because of the emotional and financial strain of having an illegitimate child. *Id.* at 463–64, 108 S.Ct. at 1915–16. The Court reasoned that the six-year limitation was not substantially related to a state's governmental interest in preventing stale and fraudulent claims from being presented because, in other circumstances, the law allowed litigants to bring paternity and support claims later than six years after the child's birth. *Id.* at 464, 108 S.Ct. at 1915–16. The decision further discounted the problem of stale and fraudulent claims being initiated by stating that, with the increased sophistication of genetic testing, the problem was less prevalent. *Id.* at 465, 108 S.Ct. at 1916.

[¶ 10.] In a case strikingly similar to our own, the Montana Supreme Court relied on the *Clark* decision to determine the case of *State of Arizona v. Sasse*, 245 Mont. 340, 801 P.2d 598, 601 (1990). In *Sasse*, the mother was married when she had sexual relations with a man who was not her husband. *Id.* at 599. She gave birth to a child, and the mother's husband was presumed to be the father. When the child was twelve years old, a paternity action was commenced on behalf of the mother and the child against the man with whom the mother had extramarital sex. *Id.*

[¶ 11.] Montana had a statute providing that a child with a presumed father had to bring an action within five years after the child's birth to declare the nonexistence of the father-child relationship. *Id.* Montana also had a statute allowing a child with no presumed father to have up to two years after the child reached the age of majority to bring an action. *Id.* The Montana Supreme Court agreed with the district court's conclusion that the statutes created a "classification which distinguishes for disparate treatment children with presumed fathers and children without presumed fathers." *Id.*

[¶ 12.] Montana's discriminatory classification was "based on the state's interest in maintaining stable families and in the prevention of stale or fraudulent claims." *Id.* at 601. The Montana Supreme Court noted that the five-year limitation may not be adequate because a mother may not be willing to commence an action on her child's behalf during the limitation period. *Id.* The Court recognized that other Montana statutes allowed paternity and support claims to be brought much later than five years after the child's birth and that the advances in genetic testing have removed "much of the fear of false or fraudulent claims of paternity." *Id.* Relying on these findings, the Montana Supreme Court declared that the five-year limitation was unconstitutional because the limitation was not substantially related to an important governmental objective. *Id.* at 602. *See also In re the Marriage of K.E.V.*, 267 Mont. 323, 883 P.2d 1246 (1994) (expanding ruling in *Sasse*, declaring statute unconstitutional for all purposes).

[¶ 13.] The South Dakota Legislature requires a child with a presumed father to bring a claim within sixty days after the child's birth to declare that the father-child relationship does not exist, otherwise paternity is unassailably presumed in the absence of fraud. SDCL 25–8–59. This type of action is necessary before the child may establish that another man is his nat-

ural father. A child without a presumed father, however, may bring an action to establish paternity "at any time before the eighteenth birthday of the child." SDCL 25–8–9. Like the Montana statutes discussed in *Sasse*, South Dakota's statutory scheme discriminates between children with presumed fathers and children without presumed fathers. To comply with the equal protection guarantees, the classification must be substantially related to an important governmental objective.

[¶ 14.] What more vital governmental interest can there be than safeguarding children's rights to support? Children have a fundamental right to be supported by their parents. We do not know the financial status of the presumed father here, other than that he has a court order in hand declaring that he has no support obligation. Perhaps that order may be amended in some future hearing. Yet, one need not imagine too expansively to see the mischief our sixty day limitation period can wreak on children. What if the presumed father became incompetent or died? Under our statute, the natural father could still avoid any obligation to support his child by asserting that the child is presumed legitimate and that the dead or incompetent presumed father's paternity cannot by challenged because the sixty day limitations period has expired. For children who do not have presumed fathers, no such limitation exists. Our statute is discriminatory on its face.

[¶ 15.] This Court may address constitutional issues sua sponte. *State v. Beck*, 2000 SD 141, ¶ 15, 619 N.W.2d 247, 252; *State v. Baker*, 440 N.W.2d 284, 293 (S.D.1989); *Bayer v. Johnson*, 349 N.W.2d 447, 449 (S.D.1984). In a case like this, it is vitally important that we do so because this "constitutional question is a matter of considerable importance to the public policy of the state." *Boever v. South Dakota*

*Bd. of Accountancy*, 526 N.W.2d 747, 751 (S.D.1995). Child support is just such a vital concern. "In such circumstances, it is entirely appropriate for this Court to address the issue sua sponte even if the objection before the trial court was inartful or otherwise insufficient to preserve the error for review." *Beck*, 2000 SD 141, ¶ 15, 619 N.W.2d at 252 (citations omitted). We need go no further than to state that the sixty-day limitation period in SDCL 25–8–59 is unconstitutional. Next, we must consider the two conflicting presumptions that remain.

**B. Conflicting Presumptions**

[¶ 16.] In *Do Rego*, the mother married while she was pregnant with another man's child. 2001 SD 1, ¶ 3, 620 N.W.2d at 770. Thus, the child was born into an existing marital relationship. The purpose of the statute was fulfilled, and the child was presumed to be a child of the marriage. To declare the child illegitimate in order to obtain support from the biological father would not have served the best interests of the child. On the other hand, to apply the presumption statute here is to ignore reality and, worse, to ignore the best interests of the child. The presumption of paternity was asserted not by a family member to preserve family unity, but by a stranger to the family who asserted the presumption only to avoid a support obligation.

[¶ 17.] No matter how scrupulously we may cleave to the literal words of a statute, under no reading of South Dakota's comprehensive laws dealing with families and children could it ever be deduced that the Legislature intended the result here. A possibility that the biological father and the presumed father might both evade a duty to pay support, leaving the child unsupported by either, is precisely the kind of absurd result we have always said our

statutory interpretation should avoid. Other courts have dealt with this dilemma and from them we take guidance.

■ [¶ 18.] Several jurisdictions have held that the presumption of legitimacy was never intended to shield biological fathers from their support obligations. *State on Behalf of J.R. v. Mendoza,* 240 Neb. 149, 481 N.W.2d 165, 172 (1992). *See also Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997) (refusing to apply common law presumption of paternity to relieve biological father of support obligation). In fact, our Legislature enacted a contrary presumption, which we must factor into our decision. Genetic testing is presumed to establish paternity.

> Genetic test results establishing a threshold probability of paternity of ninety-nine percent or more shall create a rebuttable presumption of paternity and allow the department of social services to establish a support obligation in accordance with the provisions of §§ 25–7A–5 to 25–7A–8, inclusive, without requiring any further proceedings to establish paternity.

SDCL 25–8–58. It is our duty to reconcile statutes as best as reasonably possible. *Karlen v. Janklow,* 339 N.W.2d 322, 323 (S.D.1983). The Legislature obviously enacted this section in furtherance of the public policy that parents should be identified and made to provide support for their children. In no event should one be able to escape parental obligations by leaning on the fiction that a child is better off legitimate than supported.

[¶ 19.] The presumption is based on the policy of advancing the best interests of children. *Dep't of Health and Rehab. Serv. v. Privette,* 617 So.2d 305, 307 (Fla. 1993) (citation omitted). This policy ought to be the guiding principle informing our actions in this complex and sensitive area. We must never forget that it is always the child who has the most at stake in a paternity case. *State v. Santos,* 104 Wash.2d 142, 702 P.2d 1179, 1180 (1985).

■ [¶ 20.] With the sparse record before us, we cannot assume that the former husband, Stein, can or will be responsible for paying child support simply because the law presumes him to be the father. It is unclear whether Stein received any notice of these proceedings. From what little can be found in the scant record, it appears that this child received some type of public assistance and South Dakota seeks to recover it from Byer. The child faces the danger of conflicting decisions if Stein has no legal obligation per a court order to pay support. By giving notice of his right to appear, a judgment here will be binding on him for the purposes of res judicata and estoppel. *In re Paternity of J.R.W.,* 814 P.2d 1256 (Wyo.1991).

[¶ 21.] Many other jurisdictions require, either by precedent or by statute, that the child's best interests be fully considered in resolving competing presumptions. *See N.A.H. v. S.L.S.,* 9 P.3d 354 (Colo.2000) (statute and court rule); *In re Paternity of B.J.H.,* 573 N.W.2d 99 (Minn. Ct.App.1998) (best interests of the child part of analysis for resolving conflicting presumptions); *In re Paternity of Adam,* 273 Mont. 351, 903 P.2d 207 (1995); *Privette,* 617 So.2d at 307 (court rule); *M.F. v. N.H.,* 252 N.J.Super. 420, 599 A.2d 1297 (App.Div.1991) (statute); *In re Paternity of C.A.S.,* 161 Wis.2d 1015, 468 N.W.2d 719 (1991) (state statutes explicitly direct courts to consider the best interests of the child); *Ban v. Quigley,* 168 Ariz. 196, 812 P.2d 1014, 1018 (Ct.App.1990) (court rule); *C.C. v. A.B.,* 406 Mass. 679, 550 N.E.2d 365 (1990) (court rule); *In re Marriage of Ross,* 245 Kan. 591, 783 P.2d 331 (1989) (statute); *McDaniels v. Carlson,* 108 Wash.2d 299, 738 P.2d 254 (1987) (statute).

[¶ 22.] Because K.S. can have only one legal father, we believe that the best way to resolve the competing presumptions afforded to Stein and Byer is to consider the best interests of the child. South Dakota law is replete with the requirement that the child's best interests be considered. As the Colorado Supreme Court noted in a conflicting presumption case, "[s]ome states have set out exhaustive lists of factors to be considered in determining the best interests of the child. Other states have left the determination largely to the discretion of the trial judge. We believe the latter course is the wiser." *N.A.H. and A.H*, 9 P.3d at 364 (citations omitted). We agree. Whether Byer can successfully assert the presumption of paternity should be determined by gauging K.S.'s best interests. The best interests criteria protects children in cases where rebutting the marital presumption would adversely affect the child's interest in continuing a relationship with his or her presumed father. For example, if the child is being supported by the presumed father, then that would suggest that it is not in the child's interests to attempt to establish paternity in a putative father.

[¶ 23.] Other jurisdictions have held that even if the facts of the case appear to point to terminating the presumed father's rights and vesting parental rights in the biological father, courts should err on the side of caution and receive input from the child's guardian ad litem before making a determination. See *M.R.D. v. F.M.*, 805 P.2d 1200, 1203 (Colo.Ct.App.1991); *Lechner v. Whitesell*, 811 S.W.2d 859, 861 (Mo. Ct.App.1991) (requiring appointment of guardian ad litem to represent child in paternity action because child's interests may conflict with mother's).

[¶ 24.] Between two men not wishing to pay support, someone needs to look out for the interests of the child. To accomplish this, courts must balance conflicting presumptions in an effort to protect the child. Otherwise, K.S. may have no father to support her, not her putative father and not her presumed father.

[¶ 25.] We reverse the summary judgment and remand to the circuit court to consider the best interests of the child. At the close of the case, at least one of the two, the presumed father or the putative father, should be required to support the child.

[¶ 26.] Reversed and remanded.

[¶ 27.] MEIERHENRY, Justice, concurs.

[¶ 28.] SABERS, Justice, concurs specially.

[¶ 29.] GILBERTSON, Chief Justice and ZINTER, Justice, dissent.

SABERS, Justice (concurring specially).

[¶ 30.] A child, brought into this world through no action of her own, clearly has the right to be supported by a parent. The South Dakota Legislature has so provided in many ways on many occasions. See e.g. SDCL 25–5–18.1 (parents of a child are under a legal duty to support the child until the child is eighteen or until child turns nineteen if he or she is a full-time student in a secondary school); SDCL 25–7–6.1 (parents jointly and severally obligated for necessary maintenance, education and support of the child); SDCL 25–7–7.1 (duty of support continues if child is placed with DSS for custody, guardianship or care and placement); SDCL 25–7–8 (stepparent is liable for support and maintenance of child, but that liability does not absolve the natural or adoptive parent of support obligation); SDCL 25–7–10 (third person supplying necessaries for a child may recover for the reasonable value thereof from the parent); SDCL 25–7–16

(nonsupport of child by parent is a misdemeanor; felony where parent leaves the state). The constitutions prohibit the denial of life, liberty or property without due process of law.

[¶ 31.] The South Dakota Legislature has expressly provided to all minors the right to sue to establish their rights throughout their minority and, if they are attending school, until their 19th birthday. See SDCL 26-1-1; SC: 26-1-3; SDCL 25-5-18.1. These rights include the right to be supported by one's parent. Given our constitutions, it is highly questionable whether the Legislature could take away these rights even assuming that was their intention. Obviously, there is no such intent expressed in Chapter 25-8.

[¶ 32.] Therefore, I concur specially in the writing of Justice Konenkamp.

ZINTER, Justice (dissenting).

[¶ 33.] Today this Court, on its own motion, declares that a statute of limitations violates equal protection guarantees. This Court also adopts a new test in this jurisdiction for resolving conflicts in paternity presumptions. Neither issue was raised before the circuit court or briefed and argued before this Court. While this Court may address issues *sua sponte,* "the invocation of this doctrine has been used most sparingly and then only in important cases of permanent state wide implication." *State v. Beck,* 2000 SD 141, ¶ 26, 619 N.W.2d 247, 254 (Gilbertson, J., dissenting). However, neither the Department of Social Services nor Wright suggests that this is such a case. Indeed, their only argument before the trial court and this Court was that the divorce stipulation extended the statute of limitations sufficiently to maintain this action. Moreover, a resolution of these new issues requires a balancing of a number of conflicting policy considerations. Therefore, in my view, we should decline to decide such issues without the opportunity to hear the "other view."

[¶ 34.] The majority opinion addresses these issues for the laudatory goal of safeguarding children's rights to support. *See supra* ¶ 14. The Court asks "[w]hat more vital governmental interest can there be than safeguarding children's rights to support?" *Id.* However, there are more considerations involved in the calculus than child support. Consideration must also be given to competing governmental interests in maintaining the stability of families, as well as public policy relating to maternal and paternal motivations to establish paternity, marital rights and obligations, the putative father's rights and obligations, the biological father's rights and obligations, and the best interests of the children. Because the outcome of both new issues is dependent upon all such governmental interests, we should not decide this case solely upon a child support consideration. We should consider both issues only after we have been presented with all of the competing governmental policies and objectives supporting the statutes involved.

[¶ 35.] Because no one challenged the rebuttable presumption of legitimacy nor the constitutionality of the sixty day statute of limitations at any level of this proceeding, we have been denied the benefit of a "properly developed record and the benefit of proper briefing and appellate argument." *Beck,* 2000 SD 141, ¶ 26, 619 N.W.2d at 254 (Gilbertson, J., dissenting). This omission has specifically deprived us of the opportunity to consider the opposing view raised by the dissent in the Montana case upon which this Court relies. *See Sasse,* 801 P.2d at 604 (dissent distinguishing opposing authority and pointing out that the classification only involves children that already have presumed fathers,

and presumed fathers are still legally required to support their children).

[¶ 36.] Moreover, the Attorney General has not had the required notice of the Court's constitutional challenge to SDCL 25–8–59. *See* SDCL 15–6–24(c).

> Ordinarily, we will not rule on the constitutionality of a statute unless the Attorney General has been notified because when an adjudication of unconstitutionality may seriously affect the general public, it is proper for the Attorney General to appear on behalf of the Legislature and the people.

*West Two Rivers Ranch v. Pennington County*, 1996 SD 70, ¶ 15, 549 N.W.2d 683, 687 (citations omitted). This is particularly significant in this case because again, the Montana authority upon which this Court relies involved a case in which the Montana Attorney General was given notice and an opportunity to appear and defend the constitutional challenge. *Sasse*, 801 P.2d at 599.

[¶ 37.] Finally, it must be noted that the majority opinion and special concurrence are premised on the supposition that this child has no father to look to for support. In fact, the Court opens its opinion with the wholly unsupported assumption that this is "an instance where the presumption of legitimacy resulted in a child not receiving financial support from either her presumed father or her putative father."[1] *Supra* ¶ 1. While common sense and human nature may suggest that possibility in some cases, it must be recognized that there is absolutely no evidence to support that occurrence in this record. Obviously, in reviewing this case, we are constrained to a review of what is in the record. Because there is *no evidence* that the presumed father will not support this

child, we are only left to speculate concerning Stein's and Byer's future likelihood of providing support. Moreover, we must remember that under the record we have today, *Stein is the child's legal father;* and therefore, Stein is charged with the duty of supporting her. SDCL 25–5–18.1; SDCL 25–8–57; SDCL 25–7–6.1.

[¶ 38.] Therefore, while I do not disagree with the reasoning and result of the Court, I would not, considering the facts and posture of this case, raise and analyze these issues *sua sponte*. I would certainly not attempt to choose the best method of analyzing conflicting paternity presumptions without the opportunity to consider the alternatives. I must therefore dissent.

[¶ 39.] GILBERTSON, Chief Justice, joins this dissent.

---

1. The court repeats this unfounded assumption speculating that Stein "apparently is not

supporting the child...." *Supra* ¶ 7.