2005 SD 37

**The DEPARTMENT OF SOCIAL SERVICES OF THE STATE of South Dakota, ex rel Julienne C. WRIGHT, Plaintiff and Appellant,**

v.

**Bret J. BYER, Defendant and Appellee.**

No. 22609.

Supreme Court of South Dakota.

Order Granting Rehearing on May 7, 2004.

Argued on Rehearing on Jan. 12, 2005.

Decided March 16, 2005.

Lawrence E. Long, Attorney General, David L. Braun, Special Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellant State.

Donald M. McCarty of McCann, Ribstein, Hogan & McCarty, Brookings, South Dakota, Attorneys for defendant and appellee Byer.

Terry D. Wieczorek, Brookings, South Dakota, Attorney for Child K.S.

KONENKAMP, Justice.

[¶ 1.] In *Department of Social Services (DSS) ex rel. Wright v. Byer,* 2004 SD 41, 678 N.W.2d 586 (*Byer I* ), we declared the sixty day statute of limitations in SDCL 25–8–59 to be unconstitutional. Thereafter, DSS sought a rehearing, asserting that the decision in *Byer I* would result in a loss or reduction of substantial federal funds for child support enforcement because the portion of the statute declared unconstitutional was part of a federal mandate. DSS asks that we remand this case so that it can proceed against both the presumed father and the putative father. DSS believes that if we hold in abeyance

our decision on the constitutionality of the statute, a judgment of support against the presumed father will make the issue moot. DSS also seeks to proceed with the blood test of the putative father so that if it does not succeed in its case against the presumed father, it can proceed against the putative father and if the case returns to this Court, we will have a complete record before deciding on the constitutionality of the statute. We agree, and accordingly remand to the circuit court for further proceedings.

## Background

[¶ 2.] We briefly restate the facts from *Byer I.* Toward the end of their marriage, Julienne C. Wright and Steven Stein became estranged, and Wright moved out of the home. From August to October 1998, she lived with defendant, Bret J. Byer. On February 4, 1999, Wright and Stein divorced. The divorce decree incorporated their stipulation, which provided for joint legal and physical custody of their two sons. The decree also ordered that because custody was to be shared equally neither party would pay any child support. In addition, the stipulation provided: "considering [Wright] is currently pregnant, the parties agree that a paternity test will be performed after the child is born. If [Stein] is determined [to be] the biological father of the child, the visitation schedule for the minor child will be the same schedule as for the other children, as set forth in this provision...." A girl, K.S., was born on May 2, 1999. Stein was listed as the father on her birth certificate, and she was given Stein's name. Neither Wright nor Stein brought an action to determine paternity within sixty days of the child's birth.

[¶ 3.] Wright received public assistance for K.S. from the State of South Dakota. Consequently, almost three years later, on March 9, 2002, a paternity action was commenced by DSS, seeking to have defendant, Bret J. Byer, declared K.S.'s father and requesting an order for child support. In her affidavit, Wright alleged that while she was still married to Stein, she was residing with Byer when K.S. was conceived. She asserted that the issue of Steven Stein's paternity had been disputed since the divorce, but recent paternity testing had excluded him as the biological father of K.S. Relying on *In re Support Obligation of Do Rego*, 2001 SD 1, 620 N.W.2d 770, the circuit court granted summary judgment dismissing the action because it was brought after the sixty day limitations period expired.

[¶ 4.] Under his divorce decree, Stein is not presently obligated to pay child support for K.S. From the sparse record, we cannot determine if any effort has been made to modify Stein's decree to provide for the support of his presumed daughter, K.S. There is only the stipulation, with its tentative recognition that he may not be K.S.'s father.

## Analysis and Decision

[¶ 5.] On rehearing, we examine this case under the same standard of review we used in *Byer I.* At issue here are two statutes. The first is SDCL 25–8–57, providing that "[a]ny child born in wedlock, or born within ten months after dissolution of the marriage, is presumed legitimate to that marriage even if the marriage is subsequently declared to be null and void, or subsequently dissolved by divorce." The rebuttable presumption in § 25–8–57 "can only be disputed by the husband or wife, or a descendant of one or both of them." *Id.* The second statute is SDCL 25–8–59:

Any action contesting a rebuttable presumption of paternity as established by §§ 25–8–50 to 25–8–58, inclusive, shall be commenced in circuit court either sixty days after the creation of the presumption of paternity or the date of any

administrative or judicial proceedings relating to the child including proceedings to establish a support obligation in accordance with § 25–8–52, whichever occurs earlier, except in cases where there are allegations of fraud, duress, or material mistake of fact. In cases involving allegations of fraud, duress, or material mistake of fact, any action contesting a rebuttable presumption of paternity shall be commenced within three years after the creation of any presumption. The burden of proof shall be upon the moving party and the payment of child support, or any other legal responsibilities of the parties, may not be suspended during the pendency of the proceedings, except upon a showing of good cause by the moving party.

*Id.* Byer, the putative father, successfully raised the presumption of legitimacy under § 25–8–57 and the sixty day limitations period in § 25–8–59. In so doing, he avoided an obligation to take a blood test and a possible consequent obligation to support K.S. In a recent paternity test, the former husband, Stein, was shown not to be the father of K.S. He is not required to pay support for the child under the stipulated divorce agreement.

[¶ 6.] DSS, on behalf of Julienne C. Wright, the attorney and guardian ad litem for K.S., and Byer all maintain that the sixty day limitations period in SDCL 25–8–59 is constitutional. Nonetheless, from the sparse record, we cannot determine whether K.S. will receive support from either the presumed father, Stein, or the putative father, Byer. All that can be garnered from the record is that DSS provided K.S. and her mother public assistance, that the presumed father, Stein, was not involved in these proceedings, that Stein and Wright's divorce decree provides that Stein is not obligated to pay child support, that Stein has been ruled out as K.S.'s biological father, and that Byer has

not been required to take a paternity test. Such minimal information serves us poorly when the ultimate inquiry concerns the well-being and best interests of a child.

[¶ 7.] To avoid a ruling on the constitutionality of SDCL 25–8–59, DSS asks that we remand to the circuit court so that it can proceed against both the presumed father and the putative father. DSS believes that if we hold in abeyance our decision on the constitutionality of the statute, it can obtain a judgment of support against the presumed father and the constitutionality of the statute would become moot. DSS also seeks to proceed with the blood test of the putative father so that if it does not succeed in its case against the presumed father, it can proceed against the putative father, and if the case returns to this Court, we will have a complete record before deciding on the constitutionality of the statute. On remand, vital fact questions that this Court cannot answer at this point will be addressed by the circuit court.

[¶ 8.] Consequently, we remand this matter so that DSS can proceed in accordance with this opinion. *See generally Davis v. Davis,* 1999 SD 116, ¶ 8, 598 N.W.2d 921, 922; *Dixon v. Dixon,* 423 N.W.2d 507, 509–10 (S.D.1988); *Putnam Ranches, Inc. v. O'Neill Prod. Credit Assoc.,* 271 N.W.2d 856, 858 (1978) (remanding so that the "parties should have a chance to develop a more complete record on convenience to witnesses and the promotion of the ends of justice"). The circuit court should require the putative father, Byer, to undergo a paternity test. We suspend the question whether SDCL 25–8–59 is unconstitutional. We will defer judgment on this question until the facts are fully developed. Since we previously reversed this matter in *Byer I,* we now

remand for the circuit court to make further factual determinations as noted above.

[¶ 9.]   Remanded.

[¶ 10.]   SABERS and MEIERHENRY, Justices, concur.

[¶ 11.]   GILBERTSON, Chief Justice and ZINTER, Justice, dissent.

ZINTER, Justice (dissenting).

[¶ 12.]   Mother, through the Department of Social Services (DSS), is seeking to establish paternity and obtain child support from a putative father.  Although the statute of limitations bars the action, the Court permits "DSS ... to proceed with the blood test of the putative father so that if it does not succeed in its case against the presumed father, it can proceed against the putative father...." *Supra* ¶ 7. In other words, even though the statute of limitations bars this action against the putative father, *see* SDCL 25–8–59 and SDCL 25–8–57,[1] the Court has granted DSS's request to remand this matter and "proceed against both the presumed father and the putative father." *Supra* ¶ 7. Because the Court's disposition is expressly prohibited by *In re Support Obligation of Do Rego*, 2001 SD 1, 620 N.W.2d 770, I respectfully dissent.

[¶ 13.]   In *Do Rego*, this Court unequivocally held that even though paternity testing effectively rebuts a presumption of legitimacy with respect to a presumed father, an action against a putative father may not proceed if the statute of limitations in SDCL 25–8–59 has expired.  *Id.* ¶ 8. Just as in *Do Rego*, the statute of limitations expired in this case before DSS commenced this action on Mother's behalf.[2]  Therefore, because Mother "did not rebut the presumption of legitimacy within the allowed period of time, she is precluded from challenging it now." *Id.* ¶ 9.

[¶ 14.]   Furthermore, under our unequivocal precedent, blood testing may not be considered in a statutorily barred action.  *Do Rego* clearly held that "evidence [i.e. blood testing] effectively rebut[ing] the presumption of legitimacy will not be reached [if] the statute of limitation to contest the presumption has expired." *Id.* ¶ 8. Nevertheless, in the current case the Court also permits further blood testing.

[¶ 15.]   The Court accedes to this rather remarkable request by DSS to proceed against a putative father on a barred action so that "vital fact questions" concerning the constitutional issue can be addressed by the circuit court.[3] *Supra* ¶ 7. This reasoning is flawed because the questions now before us are only questions of law; i.e. whether a statute of limitations bars this action, and if so, whether that statute of limitations is constitutional. Thus, there is no need to develop further "vital fact questions."  More fundamental-

---

1.   *See supra* ¶ 5.

2.   The presumption of legitimacy arose on May 2, 1999, the date that K.S. was born. Because there was no allegation of fraud, duress, or material mistake of fact, the presumption of legitimacy could only be contested within sixty days of May 2, 1999.  *See* SDCL 25–8–59.  Although Mother and the presumed father (Stein) were aware of the pregnancy and putative father (Byer) at the time of the divorce, and although Mother had agreed to perform genetic testing after the child was born, Mother took no action to determine paternity until March 9, 2002, almost three years after the birth of the child and after the statute of limitations had expired.

3.   The claimed "vital questions" of fact are whether DSS can obtain a judgment against the presumed father, and whether the putative father can be proven to be the biological father through blood testing.  However, the first question is a matter of law and the second is irrelevant to the constitutional question.

ly, we simply have no judicial authority to order that a statutorily barred action proceed because we hope that further proceedings may develop facts that could shed light on a constitutional issue.

[¶ 16.] In the final analysis, unless this Court holds that the statute of limitations is inapplicable, or unless this Court overrules *Do Rego*, we have no authority to decline to follow the statute of limitations in SDCL 25–8–59. Because the Court has neither invalidated SDCL 25–8–59 nor overruled *Do Rego*, I dissent.

[¶ 17.] GILBERTSON, Chief Justice, joins this dissent.