

DA 11-0019

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 255

IN RE THE MARRIAGE OF:

SHANNON MARIE JOHNSON,

        Petitioner and Appellant,

   and

TRAVIS ISAAC JOHNSON,

        Respondent and Appellant,

   and

JUSTIN WALAK,

        Intervenor and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
                     In and For the County of Cascade, Cause No. ADR-09-284
                     Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Barbara E. Bell, Marra, Sexe, Evenson & Bell, P.C., Great Falls, Montana

        For Appellee:

                Jeffrey S. Ferguson, Attorney at Law, Great Falls, Montana

                          Submitted on Briefs:  August 3, 2011

                                    Decided:  October 11, 2011

Filed:

               _____
                              Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Shannon and Travis Johnson married in October 2005. In December 2005, Shannon gave birth, prematurely, to C.I.J. Travis was named on the birth certificate as C.I.J.'s father. Four years later, DNA tests revealed Justin Walak was actually C.I.J.'s father. Near the time Walak underwent DNA tests, Shannon and Travis had filed for dissolution of their marriage. Walak intervened in the dissolution action, seeking a judicial establishment of a parental relationship with C.I.J. Shortly thereafter, Shannon and Travis reconciled and sought to exclude Walak from establishing a relationship with C.I.J. The Eighth Judicial District Court in Cascade County granted Walak parental rights. The Johnsons appeal. We reverse and remand.

## ISSUE

¶2 A restatement of the dispositive issue on appeal is:

¶3 Did the District Court abuse its discretion by granting Walak's posttrial motion and vacating its August 26, 2010 Findings of Fact, Conclusions of Law, and Order Regarding Parent/Child Relationship?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In July 2005, Shannon, who lived in Pennsylvania at the time, became pregnant with C.I.J. She surmised that the father of the child was either Justin Walak or Travis Johnson. Walak lived in the same Pennsylvania town as Shannon and had been her boyfriend for approximately six weeks when she discovered she was pregnant. Travis was another boyfriend who had joined the Air Force and was stationed in North Carolina. He and Shannon had dated on and off throughout 2005 whenever he could get to

2

Pennsylvania from North Carolina. In July, Travis returned to Pennsylvania for three weeks prior to being stationed in Italy. Shannon and Travis spent time together during these weeks.

¶5 Upon learning she was pregnant, Shannon informed Walak and indicated that he may be the father. Walak attended at least one doctor appointment with Shannon but the couple broke up in September 2005. In October 2005, when Travis returned stateside on leave, Shannon told him she was pregnant and informed him that he or Walak was the father. Travis and Shannon married on October 28. Travis returned to Italy and Shannon joined him upon obtaining a passport. C.I.J. was born prematurely in Italy in December 2005. Travis was named C.I.J.'s father on his birth certificate. In May 2007, the couple had a second child.

¶6 The Johnsons moved to Montana in August 2008 where Travis continued serving in the Air Force in Great Falls. The couple began having marital problems, separated in May 2009, and filed for dissolution in June 2009. In August, Travis was assigned to temporary duty in Wisconsin for two months and Shannon took the children to Pennsylvania to visit family. While there, she contacted Walak and he met and spent time with C.I.J.; however, C.I.J. was not told that Walak may be his biological father. Shannon subsequently informed Travis she and the children were not returning to Montana. Travis obtained a temporary custody order on October 16, 2009, allowing him to go to Pennsylvania, pick up both children, and return with them to Montana. Shannon remained in Pennsylvania for a few weeks after Travis and the children left but then returned to Montana.

¶7 By November 2009, Shannon and Travis were living together again in an attempt to reconcile. On December 2, 2009, Walak intervened in the Johnsons' dissolution proceeding seeking paternity testing to identify C.I.J.'s biological father. The DNA tests showed Walak was C.I.J.'s biological father. Walak then moved for an interim parenting plan giving Walak specific contact and visitation rights. The Johnsons objected. The District Court conducted a bench trial on July 22, 2010.

¶8 On August 26, 2010, the District Court issued its Findings of Fact, Conclusions of Law, and Order Regarding Parent/Child Relationship (Order I). The court acknowledged Walak was C.I.J.'s biological father but noted that Walak had made no attempt to assert his parental rights from the time he learned of Shannon's pregnancy in 2005 until 2009. The court found that Walak had the opportunity to stay in contact with Shannon after the couple broke up because Shannon continued to live nearby until she left for Italy in December. The court also found that Travis has "acted in all respects as C.I.J.'s father since his birth."

¶9 Relying on *Paternity of "Adam,"* 273 Mont. 351, 903 P.2d 207 (1995), the District Court considered C.I.J.'s "home environment, stability of present home and family, extent to which uncertainty of parentage already exists in the child's mind, and any commitments [Walak] has taken to establish supportive and financial ties with the child." The court also considered Walak's past diagnoses of chemical dependency and major depressive disorder. It observed that Walak had been violent and threatening with Shannon in the past and that Walak's disorders prevented him from "responding appropriately to work pressures in a usual work setting." As a result, Walak lives with

4

his parents, is not self-sufficient, and receives Social Security disability as his sole source of income.

¶10 The court then found that the Johnsons' home situation has been stable since Shannon's return from Pennsylvania, Travis has been steadily employed with the Air Force, the couple has a second child, Travis and C.I.J. are very close, and that C.I.J. thinks Travis is his father. Based upon these findings, the District Court concluded that it was not in C.I.J.'s best interest to establish a parental relationship with Walak. The court denied Walak's motion for an interim parenting plan.

¶11 Subsequently, Walak filed a "Motion Pursuant to MRCP Rule 59 and/or 60(b)."[1] Walak argued that the court "inadvertently made a mistake when the [c]ourt issued [Order I]." Walak challenged several of the court's factual findings, asserting they were not supported by the evidence. On November 8, 2010, the District Court issued an order vacating Order I (Vacating Order) and advising the parties that it would "take a fresh look at the entire case and issue new findings of fact and conclusions of law." The Court issued its second Findings of Fact, Conclusions of Law, and Order on Parent/Child Relationship (Order II) on December 8, 2010. In Order II, the District Court presented somewhat different findings and concluded that it was in C.I.J.'s best interest to have a parental relationship with Walak. The Johnsons appeal.

**STANDARD OF REVIEW**

---

[1] Walak did not argue which specific subsections of Rules 59 or 60(b) he believed applied to his case. The District Court concluded that Walak was seeking Rule 59(g) relief. As the court did not address the applicability of Rule 60, nor do we.

5

¶12 The standard of review for discretionary trial court rulings is abuse of discretion. This standard may be applied to rulings on posttrial motions, such as the grant or denial of an M. R. Civ. P. 59(g) motion to amend a judgment, which encompass the power of choice between several courses of action, each of which is considered permissible. *In re Marriage of Schoenthal*, 2005 MT 24, ¶ 9, 326 Mont. 15, 106 P.3d 1162.

¶13 We review a district court's ruling as to the "best interest of the child" and declaration of paternity for an abuse of discretion. *Paternity of "Adam,"* 273 Mont. at 358, 903 P.2d at 211.

## DISCUSSION

¶14 *Did the District Court abuse its discretion by granting Walak's posttrial motion and vacating its August 26, 2010 Findings of Fact, Conclusions of Law, and Order Regarding Parent/Child Relationship?*

¶15 In the court's Vacating Order issued on November 8, the court claimed authority to reconsider Order I under §§ 40-6-118 and 40-6-116(3)(a), MCA, or alternatively M. R. Civ. P. 59(g) (Rule 59(g)). As we noted above, Walak did not argue which subsection of Rule 59 applied to his motion. Rule 59 generally addresses new trials and amendments of judgments. While Rule 59 does not identify any specific grounds supporting a motion to alter or amend a judgment, commentators have identified four subject areas in which parties have successfully pursued such a motion. These four areas include motions which are filed: 1) to correct manifest errors of law or fact upon which the judgment was based; 2) to raise newly discovered or previously unavailable evidence; 3) to prevent manifest injustice resulting from, among other things, serious misconduct of

6

counsel; or 4) to bring to the court's attention an intervening change in controlling law. *Nelson v. Driscoll*, 285 Mont. 355, 360, 948 P.2d 256, 259 (1997).

¶16 We have held that a Rule 59 motion may not be used to relitigate old matters, present the case under new theories, raise arguments which could have been raised prior to judgment, or give a litigant "a second bite at the apple." *Hi-Tech Motors, Inc. v. Bombardier Motor Corp. of Am.*, 2005 MT 187, ¶ 34, 328 Mont. 66, 117 P.3d 159.

¶17 Rule 59(g), relied upon by the District Court, provides:

> A motion to alter or amend the judgment shall be served not later than 10 days after the service of the notice of the entry of the judgment, and may be combined with the motion for a new trial herein provided for. This motion shall be determined within the time provided hereinabove with respect to a motion for a new trial and if the court shall fail to rule on the motion within the 60 day period, the motion shall be deemed denied.

¶18 Against the backdrop of the four subject areas identified in *Nelson*, we note that Walak alleged no manifest error of law in his motion nor did he present newly discovered or previously unavailable evidence. He offered no evidence of manifest injustice such as serious misconduct by counsel or any new and controlling law. Rather, Walak simply challenged some of the court's factual findings and asserted that the District Court failed to address his constitutional rights as a parent.

¶19 Walak's argument that the court's findings were erroneous was an attempt at "a second bite at the apple." *Hi-Tech Motors*, ¶ 34. The District Court heard the evidence presented by both Walak and the Johnsons. The court presented its findings in Order I and those findings were supported by the record. Walak may not use a Rule 59(g) motion to reargue the evidence as it pertains to those findings.

7

¶20 Moreover, the District Court was not required to expressly address Walak's constitutional claims. The court rendered its findings and legal conclusions in Order I based upon the standards set forth in the applicable statutes and the best interests of the child. The District Court's failure to specifically address the constitutional protections for parents does not require it to vacate its previously-issued order. Because a Rule 59(g) motion to amend or alter is not the appropriate procedure for Walak to challenge the District Court's Order I, it was an abuse of the court's discretion to grant Walak's motion under Rule 59(g).

¶21 Further, we conclude that § 40-6-118, MCA, also relied upon by the District Court to grant Walak's motion, did not authorize the court to vacate Order I and replace it with Order II. Section 40-6-118, MCA, states:

> The court has continuing jurisdiction to modify or revoke a judgment or order:
> (1) for future education and support; and
> (2) with respect to matters listed in 40-6-116(3), 40-6-116(4), and 40-6-117(3), except that a court entering a judgment or order for the payment of a lump sum or the purchase of an annuity under 40-6-116(4) may specify that the judgment or order may not be modified or revoked.

¶22 This statute has no application to the case before us. While it permits modifications under specific subsections of §§ 40-6-116 and -117, MCA, it does not permit revocation or modification of a judgment or order *issued under § 40-6-116(1), MCA*. Section 40-6-116(1), MCA, provides "The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." In Order I, the District Court determined "the nonexistence of the parent and child relationship." Section 40-6-118, MCA, does not

confer upon a district court "continuing jurisdiction to modify or revoke" the court's judgment determining the nonexistence of the parent and child relationship. Therefore, the statute does not provide authority for the District Court's action.

¶23 Lastly, we acknowledge the long-standing rule that district courts may not vacate or change an order simply because the court has changed its mind. The rule is that "judgments or records of trial courts may be modified or amended to remedy errors in certain respects, but only to make them express what was actually decided or to grant the relief originally intended, and not to set aside what has been determined nor to correct a judicial error or make a new adjudication." *State ex rel. Vaughn v. District Court*, 111 Mont. 552, 555-56, 111 P.2d 810, 811 (1941). *See also State ex rel. Truax v. Town of Lima*, 121 Mont. 152, 158, 193 P.2d 1008, 1011 (1948); *Marriage of Cannon*, 215 Mont. 272, 274, 697 P.2d 901, 902 (1985).

¶24 As the District Court had no statutory or other authority to vacate Order I, change its legal conclusions, and issue a wholly contrary Order II, it was an abuse of the court's discretion to do so.

## CONCLUSION

¶25 For the foregoing reasons, we reverse the judgment of the District Court and remand for reinstatement of the District Court's August 26, 2010 Findings of Fact, Conclusions of Law, and Order Regarding Parent/Child Relationship.

/S/ PATRICIA COTTER

9

We concur:

/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ BETH BAKER
/S/ JAMES C. NELSON